# Lee *v*. Thompson.

| 99 95 |
| 108 284 |

### *Statutory Action of Ejectment.*

1. *Possession of land under parol gift; when adverse.*—The possession of land by a donee, under a mere parol gift, accompanied with a claim of right, is an adverse holding as against the donor, and if continued without interruption for ten years, is protected by the statute of limitations, and matures into a good title.

2. *Adverse possession; recognition of donor's title.*—In order to defeat a title to land acquired by adverse possession under a parol gift, by evidence that there was a recognition by the donee of the donor's title, it must be shown that such recognition occurred before the expiration of the period necessary to perfect the donee's title by adverse possession.

3 *Same; effect of a sale of lands under a decree.*—A defendant, claiming title by adverse possession, is concluded from setting up such title, when the lands sued for were sold as a part of her donor's estate, under a decree of the Chancery Court in a cause to which she was a party, and at which sale the land was purchased by the plaintiff.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. J. M. CARMICHAEL.

This was a statutory action in the nature of ejectment, brought by the appellant, Annie T. Lee, against the appellee, Jane Thompson; and sought to recover the possession of a certain tract of land specifically described in the complaint. The action was commenced on October 29, 1889. The title of the plaintiff, as is shown by the bill of exceptions, was rested upon a deed made by the register of the Chancery Court of Barbour county to the plaintiff, Annie. T. Lee. This deed was executed on May 8, 1889, and recited that it was made in obedience to a decree of the Chancery Court. Plaintiff introduced in evidence the records of the Chancery Court of Barbour county, which showed that after the death of Francis John, the father of the defendant in the present suit, his heirs at law brought suit in the Chancery Court against his wife, Nancy John, for the land which had been acquired by said Francis John after marriage with said

[Lee v. Thompson.]

Nancy John, which included the land now sued for in this case. It was further shown by said records that Nancy John, the widow of said Francis John, answered the bill of complaint, and that upon her death the said suit was revived against her personal representative and against her heirs, the present defendant, Jane Thompson, being one of the latter; that a compromise was effected between the parties complainant and defendant to this chancery suit, and a decree was rendered for a sale of all the land acquired by Francis John after his marriage with the said Nancy John, and this decree included the lands now involved in this controversy. Jane Thompson, the present defendant, was a party to the compromise, and the lands were decreed to be sold for the purpose of division, in accordance with the terms of said compromise. It was also shown by the said chancery record that the administrator of the estate of Nancy John, deceased, advertised the sale of lands, including those here sued for, under said decree of the Chancery Court, and that at said sale the present plaintiff, Annie T. Lee, purchased all of said lands; that said sale was reported to, and confirmed by the Chancery Court, and that upon the report of the administrator that all of the purchase-money had been paid, the register was directed to make a deed to the purchaser, the said Annie T. Lee, which was done; and it is under this deed, executed on May 8, 1889, by the register in chancery, that the plaintiff bases her right to the lands now sued for.

The defendant's claim to the property in controversy was based upon her adverse possession since the year 1864, at which time she went into possession of said lands under a parol gift from her father. The facts relative to this claim of the defendant are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the plaintiff requested the court to give the following written charges: (1.) "If the defendant acquired her right by parol gift from John, her right, whatever it was, did not become adverse until she asserted it by a positive and continuous disclaimer and disavowal of the title of John, and by the assertion of a title hostile to him brought home to his knowledge. And her possession and assertion and disavowal of this character must have been continuous for the period of ten years." To the court's refusal to give said charge the plaintiff duly excepted; and she also separately excepted to the giving of each of the following written charges at the request of the defendant: (2.) "The court charges the jury that if the use and occupation of the property is open, notorious and hostile

VOL. XCIX.

[Lee v. Thompson.]

against all the world, that is sufficient, if accompanied by the claim of ownership ; and if such occupation continued for the period of twenty years, then the jury must find a verdict for the defendant, Mrs. Jane Thompson." (3) "The court charges the jury that actual notice is not necessary to be given to the owner of the property of the actual use, occupation and adverse possession of said property under claim of ownership, if that adverse possession is open, notorious, public and against all the world, accompanied by claim of ownership, then that is sufficient notice to the party plaintiff in this suit, and if that continued for twenty years, then you must find for defendant." (5) "No matter how defendant entered the land, if she openly, notoriously claimed it as her own, used and occupied it openly, notoriously and continuously for the period of twenty years, then the jury must find a verdict for the defendant, Mrs. Thompson." (6) "If the jury believe from the evidence that the defendant, Mrs. Thompson, has been in possession of the land sued for and described in the complaint, since the year 1864—and that she has held the same open and notoriously as against everybody in the world, claimed the same for her own for this length of time even as against Frank John—then the verdict of the jury must be for the defendant, Mrs. Thompson. This will be the verdict even though Mrs. Thompson had no right to enter upon the lands at the first; yet, if entering thereupon, she had since held the same as her own for the time, from 1864, up to the commencement of this suit, the verdict must be for the defendant, Mrs. Thompson." ·

There were verdict and judgment for the defendant; and the plaintiff now brings this appeal, and assigns as error the rulings of the court in giving and refusing to give the respective charges asked.

JERE N. WILLIAMS and GEORGE W. PEACH, for appellant, cited Burrus v. Meadors, 90 Ala. 144; Bishop v. Truett, 85 Ala. 376; Jones v. Pelham, 84 Ala. 208; Burks v. Mitchell, 78 Ala. 61; Robertson v. Bradford, 73 Ala. 116; Potts v. Coleman, 67 Ala. 227; Boykin v. Smith, 65 Ala. 294.

H. D. CLAYTON, contra.

THORINGTON, J.—In the case of Vandiveer v. Stickney, 75 Ala. 225, re-affirming Collins v. Johnson, 57 Ala. 304, it was decided by this court that an uninterrupted, continuous possession of lands by a donee, under a mere parol gift, accompanied with a claim of right, is an adverse holding as

against the donor, and will be protected by the statute of limitations, thus maturing into a good title by the lapse of ten years; that the fact is immaterial that such a parol gift of lands conveys no title, and only operates as a mere tenancy at will, capable of revocation or disaffirmance by the donor at any time before the bar of the statute is complete. And that it is evidence of the beginning of an adverse possession by the donee, which can be repelled only by showing a subsequent recognition of the superiority of the title of the donor. And in 1 Amer. & Eng. Encyc. of Law, at page 280, the same doctrine is declared and supported by the citation of many decisions.

In the case at bar, appellee, who was the defendant in the court below, went into the possession of the land sued for by appellant, more than twenty years before the commencement of the suit, under a parol gift from her father, and the statement in the bill of exceptions is that "she, defendant, was in possession of the lands sued for in the year 1864, that she had occupied it continuously as her own, claiming it adversely to all persons publicly and openly and exercising acts of ownership over it until the present time;" and also, "that while she was in possession she cleared, cultivated and fenced a part of it, about fifteen acres, and she used the rest of it in getting rails and fire wood therefrom, and for other purposes when she saw fit." It also appears from the bill of exceptions that, soon after appellee so entered into possession of the lands, her father repeatedly said to her, and to others in her presence, that "he had given the lands to her as her own because her husband was killed in the war, and it would aid her in raising her orphan children."

Undoubtedly these statements of the evidence, in the bill of exceptions, show an adverse holding of the lands by appellee from the commencement of her possession, and with the knowledge of her father, and which continued a sufficient length of time to ripen into title, and there is nothing in the testimony which overcomes this proof. Whether her father had title to the property or not at the time of the parol gift it is immaterial to inquire. Appellee's right and title do not spring from the parol gift, but from her adverse possession and claim of ownership continued for a period of ten years.

The case of *Burrus v. Meadors*, 90 Ala. 140, and *Potts v. Coleman*, 67 Ala. 221, are distinguishable from the case at bar. In both of these cases the son entered on the land in recognition of, and in subordination to, the title of his

father. In the case first mentioned, the son simply went into possession of the land with the consent of the father, the latter continuing to claim the land; and in the last mentioned case it is said in the opinion of the court: "It is manifest from the evidence that the son never intended the assertion of a title hostile to that of the father." While in the case at bar it is clear appellee's possession was hostile to her father's from its inception, and so openly and notoriously such, that the father must have known it; or such as to give rise to the presumption that he knew it.

It is urged by appellant that before the adverse possession of appellee ripened into title there was a recognition by appellee of her father's title, or an implied recognition on her part that the lands belonged to his estate. That contention is based on the testimony for appellant showing that the administrator of Frank John's estate rented the land one year to Alfred Faulk, and also that appellee, on one occasion, when the administrator was about to sell the lands under a chancery decree as part of the estate of said Frank John, requested the administrator to permit her to remove a fence she had placed on the land, and also that when the lands were so sold by the administrator, appellee bid on the land in controversy with the intention of purchasing the same. Appellee's testimony showed that, when the land was so rented to Faulk and he demanded possession, she refused to surrender and told Faulk the land belonged to her; that she had been holding and claiming it adversely for twenty years; and she further denies in her testimony that she requested permission from the administrator to remove the rails. These were questions for the jury, and they decided the issues in her favor. In explanation of her bidding on the land, it is shown by her testimony that she so bid after having publicly given notice at the sale of her claim to the property, and after having forbidden the sale, and under the advice of her attorney, that if she could buy the land at $1.25 per acre, it would be better than to have a suit. Whether this would have been such a recognition of title in another as to interrupt the continuity of her adverse holding we need not decide.

It nowhere appears from the bill of exceptions that any of the facts above stated, as relied on by appellant to defeat the claim of adverse possession, occurred before the expiration of the period necessary to complete appellee's title. If her adverse possession continued for ten years, before any of the acts above referred to occurred, neither nor all of them could operate to divest her title so acquired. The title once ac-

[Howell v. Carden.]

quired by adverse possession, it was as effectual and indefeasible as if it had been created by a valid conveyance, and could only be divested by some mode recognized by the law as sufficient for that purpose; it could not be done by parol in the manner indicated by this testimony. It the acts so relied on by appellant occurred before appellee's adverse holding had ripened into title, it was incumbent on appellant to show it. She has failed to do so, and consequently her case can receive no support therefrom.

A further reason urged against appellee's title by adverse possession is, that the land here sued for was sold as part of her father's estate under a decree of the Chancery Court in a cause to which she was a party, and was purchased at such sale by the plaintiff.

As these facts are set forth in the bill of exceptions, it is manifest the appellee is concluded by the chancery decree, she having been a party to the suit in which it was rendered; and it follows that charges two, three, five and six given at her instance should have been refused. They each rest her right to a verdict upon her adverse possession alone, ignoring entirely the proof and effect of the chancery decree to which we have above referred. The charge asked by the plaintiff is opposed to the principles we have announced and there was, therefore, no error in its refusal.

For the error in giving the several charges requested by the defendant, the judgment of the Circuit Court must be reversed and the cause remanded.