# CHARLESTON.

JAMISON COAL & COKE CO. v. CARNEGIE NATURAL GAS CO. *et al.*

Submitted October 5, 1915.  Decided October 26, 1915.

MINES AND MINERALS—*Construction of Deed—Reservation—Oil and Gas in Place.*

The following in a deed, dated May 13, 1907, containing other reservations and exceptions, and conveying the surface of a tract of land, construed, in the light of the facts and circumstances surrounding the parties, to constitute a reservation and exception of the oil and gas in place: "Also reserving and excepting such rights and privileges to operate said premises for oil and gas as are set forth in a certain lease made by the said parties of the first part to W. Hunter Atha, dated July 22nd, 1901."

POFFENBARGER and WILLIAMS, JUDGES, dissenting.

Appeal from Circuit Court, Marion County.

Suit by the Jamison Coal & Coke Company against the Carnegie Natural Gas Company and others.  From decree for plaintiff, defendants appeal.

*Reversed and bill dismissed.*

*Showalter & Frame* and *Harry Shaw,* for appellants.

*Frank C. Haymond,* for appellee.

MILLER, JUDGE:

The decree appealed from, in so far as the same is material in the proper disposition of the case, and which shows the objects and purposes of the suit, adjudged and decreed that so much of the defendants' depositions as related to the intention of the parties to the deed, from the defendant H. T. Lough and wife to the Georges Creek Coal & Iron Company, of May 13, 1907, exhibit No. 2 with the bill, and intended to explain, contradict, or vary the express terms thereof, was

improper and inadmissible, and should be and the same was thereby excluded, but as to the remainder thereof the objections of the plaintiff thereto were overruled. And the court being of the opinion that the plaintiff was entitled to the relief prayed for further adjudged, ordered and decreed that plaintiff is the owner in fee simple of the oil and gas within and underlying the four several tracts or parcels of land, described in said deed, and upon which the defendant, the Carnegie Natural Gas Company, had located its wells, and is likewise the owner of all the oil and gas which can or may be obtained from any well or wells drilled or that may be drilled upon said land, and that the defendants Carnegie Natural Gas Company and H. T. Lough have no estate, right, title or interest whatever in or to said land, or to possession thereof or any part thereof, or of any well or wells drilled or attempted to be drilled thereon; and that they and each of them, their agents, servants and employees be perpetually enjoined, inhibited and restrained from further trespassing thereon, or any part thereof, for any purpose whatsoever, except that the defendant, Carnegie Natural Gas Company, should have the right to take and remove from said land the fixtures, and all the personal property placed thereon by it and used in drilling and casing said wells, provided it should exercise this right of removal within ninety days from the date of said decree, and provided further that such removal should be made without injury to said land or to the oil and gas. And the defendants were thereby further perpetually enjoined, inhibited and restrained from taking any oil or gas from, out of, by, or through, any well or wells drilled on said land, and from selling, disposing of, transporting, or marketing the same, and from setting up any claim, right, title or interest in and to said land, or to the oil and gas therein or thereunder, obtained, developed, or transported, or that might be obtained, developed, or transported therefrom thereafter. And furthermore that the lease made by the defendant H. T. Lough and wife to the Carnegie Natural Gas Company, of November 16, 1911, should be and the same was thereby set aside, cancelled and avoided as to the plaintiff, as a cloud upon its title to said land.

The provision in the deed from said Lough and wife to the

Georges Creek Coal & Iron Company, referred to, and on the proper construction of which the rights of the parties hereto depend, is as follows: "Also reserving and excepting such rights and privileges to operate said premises for oil and gas as are set forth in a certain lease made by said parties of the first part to W. Hunter Atha, dated July 22nd, 1901, and recorded in the office of the Clerk of the County Court of said Marion County, in Deed Book Number 11, page 154."

In aid of a proper construction of this important provision of the deed, counsel for the plaintiff, on this hearing, have summoned the provision immediately preceding it, as well as the two subsequent provisions thereof. The first is as follows: "Excepting and reserving however from the operations of this deed, all of the coal, together with the mining rights belonging thereto, underlying all four said tracts of land below the level of the bed of Buffalo Creek, which said coal has heretofore been sold and conveyed and is not owned by said parties of the first part." Those following are: "Also reserving and excepting from said Tract No. 2 about one acre of land where the Baptist Willow Church now stands. Also excepting and reserving from said Tract No. 4, two acres thereof off of the west end of said tract at the lower end of pond and lying between the pike and the creek, which said two acres were heretofore conveyed by said parties of the first part to ———— Clelland, and now owned by Albert Dawson and Albert Guthrie."

The lease from Lough and wife to Atha, being an ordinary oil and gas lease, referred to, provides that it shall remain in force for a term of ten years from the date thereof, and as long thereafter as oil or gas or either of them is produced therefrom by the second party thereto, his heirs, executors, administrators, or assigns, and that in consideration thereof the said party of the second part should deliver to the credit of the first parties, their heirs or assigns, free of cost in the pipe line, one eighth part of all the oil produced and saved from the premises, and pay three hundred dollars per year for gas from each and every gas well drilled thereon, the product from which should be marketed and used off the premises, within sixty days after commencing to use such gas, and yearly thereafter, so long as gas from said wells

should be so used. It is further provided in said lease that all wells shall be located so as to interfere as little as possible with the cultivated portions of the farm; and the lessee covenanted to complete a well on the premises within thirty days from the date of the lease, or pay at the rate of thirty nine dollars and fifty cents quarterly in advance for each additional three months the completion thereof should be delayed and until a well should be completed, the completion thereof to operate as a full liquidation of all rentals under that provision during the remainder of the term of the lease. The lease also contains the usual provisions for free gas to the lessors for domestic purposes, and gives the lessee the privilege to use sufficient water from the premises to run all machinery, and at any time to remove all machinery and fixtures placed on said premises, and the right to surrender the lease at any time on payment of one dollar, and after which all payments and liabilities thereafter to accrue thereunder are to cease and determine and the lease become null and void.

There were no operations under this lease, and after its expiration, on November 16, 1911, Lough and wife executed to the Carnegie Natural Gas Company the lease under which it entered and put down the well in question, and which lease the decree appealed from set aside, cancelled and avoided as a cloud upon the plaintiff's title.

Plaintiff claimed title immediately from the Georges Creek Coal & Iron Company, by deed dated February 1st, 1910, at which time the lease from Lough to Atha, of July 22, 1901, had not expired, and although this deed contains an exception and reservation of two acres, out of tract No. 4, excepted by Lough in his deed to the Georges Creek Coal & Iron Company, and also all the coal below the level of the bed of Buffalo Creek, together with mining rights, there is no exception of the oil and gas, or of the rights of the lessee in said oil and gas lease to Atha; and the plaintiff now claims by virtue of its deed, and as the court below decreed, all the oil and gas in and under said land, and that upon the expiration of said lease all rights of lessors and lessee therein were thereby terminated, and that the lessors thereafter had no right, title, or interest therein which they could lease to defendant, the Carnegie Natural Gas Company.

There can be no doubt of the jurisdiction in equity in cases of this kind.

And thus we have presented the question of the true construction of the reservation and exception relied on, contained in said deed of May 13, 1907. On behalf of the appellants, the Carnegie Natural Gas Company and Lough, it is insisted that the true construction of this provision is to reserve the oil and gas, with mining rights and privileges; or what is the same in effect, the right and privilege to operate the land for oil and gas, in the manner set forth in the Atha lease, and that by proper construction of the deed, and this provision thereof, the oil and gas were not granted, nor were they granted subject only to the rights and interests of the lessee under the Atha lease, but that the right and privilege to operate said premises for oil and gas are plainly and distinctly reserved; that the only object of referring to the prior lease to Atha was to define the method and manner in which such rights and privileges were to be exercised. They say that this reservation and exception, properly construed, was not made solely in the interest of the lessee in the Atha lease, nor indeed in the interest of the lessor, for it does not in terms even contain a reservation of the rents and royalties to accrue under that lease, but for the purpose of excepting also the right at all times to operate the property for oil and gas, according to the provisions of said lease. The authorities cited and relied upon in support of appellant's contention will be referred to and considered hereafter.

On the other hand, plaintiff and appellee, contends that said reservation and exception, properly construed, means no more than· if the grant to the Georges Creek Coal & Iron Company had been made subject only to the lease from Lough to Atha; that the words employed by the grantors therein must be construed most strongly against them, and in favor of the grantee. They argue that in the reservation and exception immediately preceding and in those immediately following this reservation the grantors took pains, in the preceding one to reserve all the coal with mining rights and privileges, and not the mere right of operating the premises for coal, as in the reservation and exception respecting the oil and gas; and that in the two following, they were equally

certain and definite in reserving the land in kind, and not the right of entering upon and operating it for any particular purpose.

Which of these conflicting views is the correct one? Against the construction which appellants would have us adopt it is urged that excepting and reserving the right and privilege to operate for oil and gas is quite a different proposition from a reservation of the oil and gas in place, and that if the latter had been the intention of the parties words more apt would have been chosen, as in the case of the other exceptions and reservations in the same deed. May it not be said in reply to this that if the grantors had intended to protect the rights of the lessee only, they would have used language plainly expressing their purpose? That they did not do so is as potent a factor on their side of this controversy. Was not the reservation or exception of the right to enter upon the land granted and to operate the same for oil and gas in the manner and as provided in the lease the equivalent of a re-grant of those rights by the grantee? Such we think is the proper construction of the literal words of the instrument. Our cases hold that a lease granting the oil and gas with privilege of entry and operating the land leased and removing the oil, in consideration of a certain per cent. thereof, is a sale of a portion of the land. *Wilson* v. *Youst*, 43 W. Va. 826. And in *Toothman* v. *Courtney*, 62 W. Va. 167, it was held that the reservation of rent or royalty from the oil in place amounts to a reservation of the thing, to-wit, an estate in the oil and gas, out of which rent or royalty is to arise. If the provision in question had stopped with the words "Also reserving and excepting (such) rights and privileges to operate said premises for oil and gas", omitting the word "such" in parenthesis, there could be no doubt that the grantors intended to reserve the oil and gas in place. These words plainly so indicate. What is to deny them that effect? Nothing that we perceive except the words following which plainly indicate to us the way and manner in which the rights and privileges reserved or excepted were to be exercised. True, as argued for plaintiff, no estate in the oil or in the right to take it vests under an ordinary oil and gas lease until oil or gas is discovered, and such an estate may never have

become vested in Atha, the lessee in the lease referred to in said exception; but as we have said, that reservation and exception was not wholly in the interests of the lessee in that lease. The words do not limit it to the rights of the lessee. The right and privilege is reserved in the grantors to operate that land for oil and gas in the manner set forth in that lease, referring thereto for description and limitation of those rights. That lease had not long to run and the grantors evidently intended to reserve to themselves the right at all times thereafter to enter and operate the property for oil and gas, and not alone to protect their lessee, but themselves afterwards, if no oil or gas should be discovered during the life of that lease.

The court properly excluded so much of the depositions of the defendants as tended to explain, contradict, or vary the language of the deed. But after this enough remained, we think, to show the character of the parties and the facts and circumstances surrounding them; and if it be conceded that the language of the instrument is ambiguous or susceptible of more than one construction, the books say we may look to these facts and circumstances in endeavoring to arrive at the real intention of the parties to the deed. This evidence shows that the officers of the coal company were shrewd, careful business men, engaged in the coal business, that they desired the surface of the land conveyed for their coal works, and for coal entries, and railroad purposes, and to prevent competitors from acquiring the land who might interfere with their coal operations on adjoining lands. This company was not engaged in the oil and gas business. The land conveyed was valuable farming land. The deed was prepared by counsel employed by the officers of the coal company for that purpose. Is it not fair to assume that business men like these, alive to all their interests, would have seen to it that the deed did not leave them in doubt as to what was conveyed to them? It is unusual in such cases to find deeds and contracts left in uncertainty. The grantor was a farmer in the country, and seems to have depended on the advice of the attorney drafting this deed for its proper interpretation. Lands in close proximity to his land were being developed for

oil and gas, and he was not disposed to part with his oil and gas interests.

These and other surrounding facts and circumstances appearing in the record render the words of the instrument quite clear and unambiguous, and evince the clear intention of the parties, which is the guiding principle in the interpretation of contracts, not to convey the oil and gas, and not to grant the oil and gas subject only to the prior lease to Atha. This seems to us a much stronger case in favor of grantors than was presented in our recent case of *Updegraff* v. *Blue Creek Coal & Land Co.,* 74 W. Va. 316, cited and relied upon by appellants. The language of the deed in this case is less open to question than was the language of the deed in the Updegraff Case. As opposed to this view counsel for plaintiff, among other cases, cite us to the recent case of *Deer Creek Lumber Co.* v. *Sheets,* 75 W. Va. 21, 83 S. E. 81. But it is only necessary to refer to that case to mark the radical difference in the controlling facts and circumstances, differentiating it from this case, and to deny it controlling force in the decision of this case.

In our opinion the plain intention of the parties to this deed from Lough and wife to the Georges Creek Coal & Iron Company, of May 13, 1907, was to reserve and except the oil and gas in place, and we are, therefore, of opinion to reverse the decree below, and dismiss the plaintiff's bill, and a decree will be entered accordingly.

*Reversed and bill dismissed.*