153 So. 219

**MARSH et al. v. GRAGG.**

**5 Div. 159.**

Supreme Court of Alabama.

Jan. 11, 1934.

Rehearing Denied March 15, 1934.

Lawrence F. Gerald and Atkinson & Foshee, both of Clanton, for appellee.

Reynolds & Reynolds, of Clanton, for appellants.

BOULDIN, Justice.

Appellants, S. A. Marsh et al., filed their bill in equity against V. J. Gragg to settle a disputed boundary line between them as coterminous landowners.

The property involved lies in block 7 of the town of Clanton. This block is a quadrangle, practically a square, measuring 310 feet on every side.

Complainants' muniment of title, dating back to 1882, conveys the west half of this block:

Respondent's muniment of title, dating back to 1908, calls for a lot measuring 150 feet on each of the four sides, and lying in the northeast corner of the block, but, taken in connection with his chain of title and his possession, it is not questioned that he owns to the middle of the block, 155 feet.

Without controversy the true boundary, as fixed by the title deeds of the parties, is the median line of the block, 155 feet from, and parallel with, both the east and west boundaries of the block. This is the line claimed by complainants.

Respondent claims to a certain ditch, which crosses the northern boundary line of the block some 38 feet west of the corner named in the deeds, and runs south bearing east. The area east of this ditch and west of the median line of the block is the property in dispute.

Respondent's claim rests upon the law of adverse possession applicable to such controversies.

Dealing first with the possession since the respondent, Dr. Gragg, acquired his property, it is without dispute that at the time of his purchase, and long before that, a small house, usually occupied as a servant's house, stood just east of this ditch near the north boundary. This house was in the possession and use of respondent and his predecessors in title as their own. Some evidence dates such possession back to 1884. When the house was first erected, and under what circumstances, is not shown.

At the time of Dr. Gragg's purchase there was also an outdoor toilet on or over the ditch in the possession and use of the servants or tenants in the house mentioned. Some evidence is to the effect this toilet was erected by permission of Mr. Wright, a brother of complainant, Mrs. Marsh, having charge of the property.

Down to 1914 the Marsh property was unimproved, but at that time a residence was built on the northwest corner of the block. What occurred about this time touching the possession of this area east of the ditch is one of the controverted issues of fact.

Two things may be taken as without substantial dispute, viz.: Complainants did not claim the servant's house, but conceded a right to remove same, and respondent did remove same back east and south, clear of the median line, or about so, and did remove the toilet off the property.

The occasion, cause, and date of such removal are the issues to which much evidence is directed.

On careful consideration of the evidence, which was taken before the register, and must, under our statute, be reviewed without presumption in favor of the decree of the trial court, our conclusion is this:

In 1914, when purposing and proceeding to build on the northwest quarter of this block, theretofore vacant, Mr. Wright, representing complainants and claiming to the line called for in the deed, requested and insisted that these structures be removed from the property.

Respondent, after some debate, in which he asserted that his predecessor in title and possession had pointed out the ditch as the dividing line, decided to remove these structures and did remove them in recognition of complainants' superior title as per the deeds.

Complainants' tenants in the new residence thereafter cultivated the strip east of the ditch as a garden from time to time, and at one time located a cow lot thereon. Respondent located his garden fence at the south end of his property, not out to the ditch, but on or near the median line. Matters remained substantially thus until 1929, when respondent proceeded to erect a pheasant yard fence some 6 feet over the line at the north boundary, running south 61 feet, being 5 feet over the line at the south end. This re-entry was promptly resisted by Mr. Wright, representing complainants; and, an offer to buy this 6-foot strip being refused, this lawsuit followed.

Appellee insists the evidence sustains the view that the ditch had become the boundary line by adverse possession at the time he purchased the northeast quarter of the block in 1908, and same was pointed out to him by his grantor.

Evidence tends to show possession to this ditch by his predecessors running back to 1884, a period of 24 years prior to appellee's purchase. That they had possession of and owned this servant's house is clear.

■ Possession, however, was without color of title, and can extend no further, as against the true owner, than what was in actual, continuous, and hostile possession. 2 C. J. p. 230, note 99, and Alabama cases there cited.

There is evidence of an ancient fence along the east side of this ditch, which, however, was in process of decay, with gaps therein, even at the time of appellee's pur-

chase in 1908, and had disappeared many years ago.

Under our law, adverse possession for the statutory period ripens into title, divesting the title of the former owner. It results that, when once perfected, a lapse in such possession does not defeat such title.

Until a grant to, or adverse possession in another, divests such title, it must be recognized. Lee v. Thompson, 99 Ala. 95, 11 So. 672.

But it is likewise true that a subsequent recognition of the title of another goes to the question of the character of the former possession and tends to discredit the claim of adverse possession. Trufant v. White & Co., 99 Ala. 526, 13 So. 83; 2 C. J. page 102, § 141.

This phase of appellee's case rests upon parol evidence covering a period of 24 years, and ending 21 years before this suit was filed. All the well-founded reasons behind the doctrine of prescription must be kept in mind when dealing with ancient matters where death and failure of memory render hazardous and uncertain a finding at variance with a status which has been recognized for a long period thereafter. City of Huntsville v. Gross, 223 Ala. 205, 135 So. 462.

We note that in all the conveyances to and from these predecessors in title the property conveyed was the east half of the block. The ditch, a natural drain, maybe improved in the course of time, was not mentioned as a boundary in any of them.

We recognize the rule that, when a grantor points out to the grantee the boundary of the tract being conveyed, and the grantee purchases on the faith of such information, and goes into possession to such line as the property purchased, his possession is presumed to be adverse.

But, if he takes a deed to a definite line, with knowledge of its location, any possession beyond that is presumed to be permissive merely.

One is not presumed to knowingly take the property of another.

All these grantors resided upon the northeast corner of this block, a small town block. While there is evidence that the adjoining streets were unimproved, with graded dirt sidewalks it seems, it is not at all to be presumed they did not know substantially the location and boundary of the property they purchased, and for which they took successive deeds.

This ditch entered the north boundary 194 feet west of the northeast corner and 116 feet east of the northwest corner. It cannot be assumed that this difference was not observed when the deeds were drawn, or at any rate by daily observation. Again, the ditch did not have the bearing of the line in their deeds, but bore perceptibly to the east. But, most important, perhaps, their deeds called for a straight line, so known of all men. The ditch was not straight, but had a decided bend and change of general direction as it approached the south end.

The line called for in their deeds could not be along and with the ditch. This was clearly observable at the time the deeds were made and at all times during their holding.

It is difficult to believe deeds would have been accepted which clearly did not cover the lands they are now said to have claimed and held in possession.

It is easy, after the long lapse of time, and much has faded from memory, to confuse the possession and claim of the lot with the possession and claim of the cabin.

As stated, the cabin dates back of the memory of all. Appellants, since 1882 it appears, have recognized its ownership in connection with the residence in the northeast corner. When this residence was first built is also beyond memory. For all that appears, the cabin may have been built while the whole block was under one ownership. In such case, it is presumed the later possession was in subordination to the title conveyed by deeds to the west half of the block. Daniels v. Williams, 177 Ala. 141, 58 So. 419.

As the northwest corner was vacant until 1914, and there was no occasion to disturb the status as to the cabin until the owner wished to improve this lot, a very rational basis may be found for the contention of appellants that the cabin had always remained there permissively, was subject to removal, and any possession of the lot was incident to the presence of the cabin, and of like character.

We do not hold, of course, that the evidence proves such origin to the possessory rights of the parties, but such possibility merely emphasizes the great caution which should be observed in dealing with evidence of ancient transactions of this character.

That this possession and ownership related to the cabin rather than the lot becomes strongly persuasive when we consider the deeds made from one owner to another throughout this period, and becomes still stronger when the appellee himself recognized and acted upon such status when appellants demanded the removal of the cabin. A case of adverse, hostile, continuous, and exclusive possession up to the ditch for the statutory period is not made out with that certainty which will warrant a court of equity in ignoring the title deeds when decreeing the boundaries between these parties.

There is some controversy as to the date the cabin or servant's house was removed. Some evidence tends to show it was in 1918 or 1919, more than 10 years after appellee purchased. Our conclusion is this house was removed in 1914 or soon thereafter, and more than 10 years before a re-entry upon the disputed area to erect the pheasant yard fence in 1929.

Appellants claim that, if the possession prior to removal was adverse so as to divest their title, their possession, after removal for the statutory period, revested their title.

In this connection, it should be observed that the actual occupancy of the dwelling and lot in the northwest corner under their title deed extended their actual possession to the boundary named in the deed, in the absence of actual adverse possession on the part of appellee. 2 C. J. p. 235, note 41, and Alabama cases there cited.

It is not important, therefore, whether the tenants on appellants' property had continuous use of the area east of the ditch or not. We do not think there was any such adverse possession on the part of appellee— brought home to appellants, as would interrupt their possession after the servant's house was removed—until the re-entry in 1929.

The trial court seems not to have kept properly in view the difference between possession with and without color of title. In his decree, he located the line in the center of the ditch, a location beyond which actual possession of appellee or his grantors had never extended; but, on the report of commissioners, departing from their commission in that regard, the line was located along the east bank of the ditch, and changing direction therewith.

Our conclusion is, there is error in the decree. It is reversed and one here rendered fixing and adjudicating the true boundary line between these parties as that called for in the title deeds, viz.: Beginning on the north boundary of block 7 at a point equidistant from the northeast and the northwest corners of said block, and running southward parallel with the east and west boundaries of the block to the southeast corner of northwest quarter of said block.

The cause is remanded for further decretal orders to properly mark said line, and remove the markers set pursuant to the former decree.

Appellee is decreed the right to remove all structures erected by him on appellants' side of the line, as thus decreed and marked, within such reasonable time as the trial court shall prescribe.

Reversed, rendered, and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.