54 So.2d 562

### SANFORD v. ALABAMA POWER CO.
### 6 Div. 993.

Supreme Court of Alabama.
Oct. 18, 1951.

McEniry, McEniry & McEniry, Besse-
mer, for appellant.

Fite & Fite, Jasper, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellee.

LAWSON, Justice.

The bill in this cause was filed by the Alabama Power Company against I. N. Sanford under § 1109, Title 7, Code 1940, to quiet the title to the iron, coal and other minerals in, under and upon the W ½ of the NE ¼ and NW¼ of the SE¼ of Section 34, Township 15 South, Range 17 West, in Walker County, Alabama. The bill was amended so as to delete therefrom the NW ¼ of the NE ¼ of said Section 34. In other words, as finally amended the bill sought to quiet the title to the iron, coal and other minerals in, under and upon the SE ¼ of the NE ¼ and the NW ¼ of the SE ¼ of said Section 34, a total of eighty acres. From a decree for complainant, the respondent has appealed to this court. Since the appeal was taken, I. N. Sanford, the appellant, has died and the cause has been revived in the name of his heirs or personal representatives.

■ A bill in equity may be properly filed and maintained under § 1109, Title 7, to quiet title to the mineral interest in land by the owner of such interest. Gulf Coal & Coke Co. v. Alabama Coal & Coke Co., 145 Ala. 228, 40 So. 397.

■ It is well settled by the decisions of this court that under the statute authorizing a bill in equity to quiet title, the complainant must have the quiet and peaceable possession, actual or constructive, as distinguished from a scrambling or disputed possession. Ladd v. Powell, 144 Ala. 408, 39 So. 46; Randle v. Daughdrill, 142 Ala. 490, 39 So. 162; Vandegrift v. Southern Mineral Land Co., 166 Ala. 312, 51 So. 983; Dawsey v. Walden, 243 Ala. 93, 8

So.2d 417; Price v. Robinson, 242 Ala. 626, 7 So.2d 568.

The complainant did not aver or seek to prove an actual possession of the minerals in question, but relies upon constructive possession, which the law attaches to legal title in the absence of an actual possession by anyone else. Vandegrift v. Southern Mineral Land Co., supra.

The answer of the respondent denied that complainant was the owner of the legal title to the minerals and denied that complainant was in peaceable possession thereof. The answer further avers that respondent is in possession of the minerals, claiming title to an undivided interest therein.

■ Complainant could not recover merely upon proof of title if the evidence showed that respondent was in possession of the minerals. Ordinarily, we would first consider the evidence as it relates to the possession of the minerals involved, because if the evidence showed that respondent was in possession or that there was a scrambling or disputed possession, it would be unnecessary to pass on the question of complainant's title. However, in view of the nature of this case, we think it advisable to first treat the question of title.

Complainant and respondent both trace their claim of title to the minerals back to a common source, one H. A. Key, it being conceded that the said Key was, as of January 16, 1874, the owner of both the surface and the minerals in the land here involved.

On January 16, 1874, H. A. Key and wife executed a deed to J. M. Garner covering 360 acres of land, including that here involved. This deed was recorded on February 20, 1882. It is the contention of complainant that this deed only conveyed to J. M. Garner the surface rights in the 360 acres of land, the mineral rights being retained by the grantor, H. A. Key.

On November 14, 1884, after the deed to J. M. Garner had been placed on record, H. A. Key and wife by warranty deed, for a recited consideration of $700, conveyed to Musgrove Brothers all the minerals in, under and upon 280 acres of land which

had been included in the deed of January 16, 1874, including the minerals in, under and upon the land involved in this proceeding. Upon the trial of this cause, complainant introduced in evidence numerous deeds executed from 1885 to 1941 showing a full, direct, and complete chain of title to the minerals involved in this suit from H. A. Key through Musgrove Brothers and others into complainant. Complainant's deed to the minerals involved in this suit, which deed included other property, was under date of September 22, 1941. All the conveyances under which complainant claims were duly recorded.

While the respondent, appellant here, does not expressly concede that the deed of January 16, 1874, from H. A. Key and wife to J. M. Garner conveyed only the surface rights to the land covered by the deed, it is not argued here, nor was it argued below, that the construction contended for by complainant, appellee here, is not correct.

The respondent relies, in the main, on a written instrument termed an "agreement," under date of September 27, 1874, which the respondent contends conveyed to J. M. Garner the mineral rights which had been excepted or reserved in the conveyance of January 16, 1874. This so-called agreement was not placed on record until April 5, 1948, long after complainant secured its deed purporting to convey to it the minerals here involved.

In regard to this "agreement," the complainant takes the position that it is not sufficient to operate as a conveyance, but that if it should be so construed, complainant was an innocent purchaser for value, without notice as to any interest which the agreement purports to convey, since it was not placed on record until April 5, 1948. The respondent contends that irrespective of the fact that the "agreement" was not placed on record, J. M. Garner and his successors in interest have been in possession of the surface of the land covered by the conveyance of January 16, 1874, from that date until the date of trial, and have performed acts showing possession of the minerals; hence complainant had constructive notice of the "agreement" under date of September 27, 1874. The respondent also seems to claim ownership of the minerals in, under and upon the lands involved in this suit by adverse possession.

The respondent's mother was the daughter of J. M. Garner, the grantee in the deed of January 16, 1874. Respondent claims to own a substantial undivided interest in both the surface and mineral rights of the land covered by the deed under date of January 16, 1874, through inheritance and by purchase from other heirs of the said J. M. Garner.

The first question for our determination is whether or not the deed of January 16, 1874, conveyed only the surface interest to the grantee therein, J. M. Garner. If that deed also conveyed the mineral interest, then it is admitted by the complainant, appellee here, that it is not entitled to recover and that the decree of the trial court is erroneous. The deed of January 16, 1874, reads as follows:

"This indenture made the 16th day of January in the year of our Lord 1874, between H. A. Key & wife C C Key of the first part J M Garner of the second part Witnesseth that the said party of the first part for & in consideration of the sum of three hundred dollars them in hand paid at & before the sealing & delivery of these presents by the party of the second part the receipt whereof is hereby acknowledged hath granted bargained sold and conveyed & by these presents grant bargain sell and convey unto the said party of the second part & to his heirs and assigns forever, the following described Lands, viz: the SW quarter & the SW ¼ of the NW ¼ & the W ½ of the SE ¼ & the W ½ of the NE ¼ Section 34 T 15 R 7 W together with all & singular the tenements & appurtenances thereunto belonging or in any wise appertaining & all the estate rite title interest claim or demand whatever *with the exception of the F Montgomery mineral agreement, to wit all the mineral access to all timber neded & together with on tenth of the surface, wright of way whatsoever of H A Key & his heirs & assigns free from claim or claims of all & every person or persons whomsoever*

*as also the claim of the General Government*

"In testimony whereof the aforesaid party of the first part has hereunto set there hands & affixed there seal the day & year above written

"H A Key    (LS)
C C Key    (LS)

"The State of Alabama,
Walker County

"I John Brake Justice of the Peace for said county certify that H A Key and C C Key whose manes are signed to the foregoing conveyance and who is known to me acknowledged before me on this day that being informed of the contents of the conveyance executed the same voluntarily on the day the same bears date
"Given under my hand the 16 day of January A D 1874

John Brake J P"

(Emphasis supplied.)

█ Unless that part of the deed of January 16, 1874, which we have italicized above operates to except the mineral interests and to reserve such interests to the grantor, then, of course, it follows that the grantee, J. M. Garner, received the entire interest in the land described in the deed. It is evident that the deed was drafted by an unskilled person. The excepting clause is poorly punctuated and is not altogether clear. The "F Montgomery mineral agreement" referred to in the deed was not produced in the trial of this cause. No one seems to know anything about its contents. Because of the admission of the parties that on January 16, 1874, H. A. Key was the owner of both the surface and mineral interests in the land covered by the deed of that date, for the purposes of this case it is to be assumed that F. Montgomery, if there was such a person, had no interest whatsoever in the minerals at the time the deed was executed. The phrase, "with the exception of the F Montgomery mineral agreement," if considered alone, might be said to be so vague and uncertain as to render such phrase inoperative in the absence of proof of its contents. However, such phrase must be considered with the words immediately following, viz., "to wit, all the mineral." When thus considered, it appears that the grantor, Key, intended to and did except the mineral interests from the conveyance and reserved in himself the title to the minerals in the land conveyed. Spears v. Wise, 187 Ala. 346, 65 So. 786; Sarratt v. Arthur, 200 Ala. 53, 75 So. 365; Jamison Coal Co. v. Carnegie Natural Gas Co., 77 W.Va. 30, 87 S.E. 451.

The deed of January 16, 1874, effected a severance of the minerals *in situ* from the surface. The title to the surface was conveyed to J. M. Garner. The title to the minerals remained in the grantor, H. A. Key.

The so-called agreement under date of September 27, 1874, which the respondent contends was a conveyance by Key and wife to Garner of the mineral interests which had been excepted and reserved by the deed of January 16, 1874, reads as follows:

"Sept, 27, 1874
"To Whom it may consern. This Agreement entered in to by James N Garner and H A Key and wife C C Key, The receipt where of is hereby acnolidged, for and in consideration of the some of one hundred and fifty dollars and one iron gray Stalion horse the debt of three hundred dolars for said land is hereby settled and in further settlement H A Key and wife C C Key said the F. Montgomery agreement in James. M Garner deed is nul and void and they do not claime the tenth of timber surface and mineral as described in deed made to James M Garner and dated January. 16th 1874

Witness { Tom. Jones. Jim Laird }    Signed before me peace A Justice of the John Brake

her
"H. A. Key. and wife C. C. X Key"
mark

█ We do not think this so-called agreement is sufficient to operate as a conveyance of the mineral interests in the land. There can be no valid and operative conveyance of land without some words of grant or alienation. We can find no such words in the agreement. The declara-

tion that "the F. Montgomery agreement in James. M Garner deed is nul and void" is meaningless. As before indicated, the contents of that agreement are not even shown. Nor should it be said that the mere fact that Key and wife, by virtue of the so-called agreement, no longer claimed "the tenth of timber surface and mineral as described in deed made to James M Garner and dated January. 16th 1874" shows an intention to convey such interests to Garner.

Respondent relies on the provisions of § 23, Title 47, Code 1940, which section reads: "A seal is not necessary to convey the legal title to land to enable the grantee to sue at law; Any instrument in writing, signed by the grantor, or his agent, having a written authority, is effectual to transfer the legal title to the grantee, if such was the intention of the grantor, to be collected from the entire instrument."

We have construed § 23, Title 47, supra, and its progenitors as dispensing with the requirement of the use of formal and technical words of grant or alienation. Cloud v. Dean, 212 Ala. 305, 102 So. 437, and cases cited.

However, in Webb v. Mullins, 78 Ala. 111, 114, after quoting § 2948 of the Code of 1876, the provisions of which are now codified as § 23, Title 47, Code 1940, Mr. Justice Clopton, writing for the court, said:

" * * * The manifest purpose of the statute is to dispense with the necessity of a seal to a valid conveyance, and of formal, technical words of grant, release, or transfer. The statute is remedial, and should be liberally construed, so far as may be necessary to suppress the mischief, and effectuate the purpose and intent of the law-makers; but, being also in modification of the common law, it will not be presumed to modify it farther than is expressly declared; and construction, or intendment, will not be resorted to, for the purpose of extending its operation. Cook v. Meyer, 73 Ala. 580.

"At common law, a deed must contain words of grant, release, or transfer, in order to pass the legal title to the land designed to be conveyed. The title to land can be transferred from one person to another, only by apposite and appropriate language.

It was not the intention of the statute to dispense with the use of any words whatever, operative to convey. By the statute, the duty is imposed upon the courts to liberally construe the words employed in the conveyance as words of transfer, and give them effect and operation according to the intention of the grantor, to be collected from the entire instrument. There must, however, be some words intended as words of conveyance. They cannot be supplied by judicial interpolation. When the entire instrument shows the intent to pass the title, it will be so construed, if practicable, to have that operation. Brewton v. Watson, 67 Ala. 121; Johnson v. Bantock, 38 Ill. 111. The instrument to James Bennifield contains no words which can be construed to transfer the legal title, and was properly excluded. If the defendant is entitled to any relief in respect to this instrument, it must seek it in another forum."

In Long v. Holden, 216 Ala. 81, 83, 112 So. 444, 446, 52 A.L.R. 536, we said:

"Innumerable cases may be cited to the proposition that the cardinal rule for the construction of written instrument is to ascertain, if possible, from the language employed, the intention of the parties, and then to give effect to such intention, if it can be done without violation of law. As often stated, the intention must be gathered from a fair consideration of the whole instrument (Hamner v. Smith, 22 Ala. 433; McWilliams v. Ramsay, 23 Ala. 813, 817), or from its 'four corners.' Slaughter v. Hall, 201 Ala. 212, 77 So. 738.

"In most of the cases the qualification is properly stated that the intention, as gathered from the language of the whole deed, will be effectuated if consistent with law. Hamner v. Smith, 22 Ala. 433, 438; Jenkins v. McConico, 26 Ala. 213, 237; Campbell v. Gilbert, 57 Ala. 569; Dinkins v. Latham, 154 Ala. 90, 99, 45 So. 60; Alabama Corn Mills Co. v. Mobile Docks Co., 200 Ala. 126, 128, 75 So. 574; 18 Corpus Juris, 254, § 198. This means, of course, where deeds and devises to real estate are concerned, that even a clearly stated intention will be ineffectual if the instrument does not, as to the mode of its execution, and the use of language apt for the purpose

stated, meet the requirements of the law. 8 R.C.L. 1035, § 91. In Culver v. Carroll, 175 Ala. 469, 479, 57 So. 767, 771 (Ann. Cas.1914D, 103), we quoted with approval this statement from Brown v. Brown, 66 Me. [316], 320:

" 'The intention of an owner of property in his attempted act of transferring it is not necessarily and always supreme. The law has prescribed certain plain rules to be observed in the execution of such important instruments as those by which the title to real property is transferred; and, whatever courts may sometimes have done in their zeal to carry into effect the intention of parties, the law itself does not permit its salutary rules to be broken or bent to meet the exigencies of ignorance or negligence; deeming it better, on the whole, that the intention of a party in disposing of his property should occasionally fail, than that its important and firmly established rules made and applied for the benefit of all be overridden.' "

■ The "agreement," not containing any words of transfer of the mineral interests, cannot operate as color of title to the minerals. In writing to this question for the court in Matthews v. Tennessee Coal, Iron & R. Co., 157 Ala. 23, 24, 47 So. 78, Mr. Chief Justice Tyson said: "The receipt upon which complainant relies as color of title does not purport to convey the lands described in it. It possesses no semblance of title, not containing any words of transfer of the lands. As said by the Supreme Court of the United States in Deffeback v. Hawke, 115 U.S. [392], 407, 6 S.Ct. 95, 29 L.Ed. 423: 'There can be no color of title in an occupant who does not hold under any instrument, proceeding, or law purporting to transfer to him the title or to give to him the right of possession.' See, also, Webb v. Mullins, 78 Ala. 110 [111]; 1 Am. & Eng. Ency. Law (2d Ed.) pp. 846, 857, and notes. It therefore cannot be looked to for the purpose of extending complainant's possession to the boundaries of the lands described in it."

■ But even if it could be said that the so-called agreement under date of September 27, 1874, operated as a conveyance of the mineral interests to J. M. Garner, it could not affect the complainant's status as an innocent purchaser for value without notice, since that agreement was not recorded until April 5, 1948, several years after the complainant secured its deed to the minerals involved.

■ It was agreed upon the trial of this cause that J. M. Garner and his successors in interest had been in possession of the surface of the land covered by the deed of January 16, 1874, from the date of its execution until the day of trial. But we cannot agree with the contention of respondent, appellant here, that the open and notorious possession of the surface was notice to complainant, appellee here, of such interest as the respondent might have, regardless of the record, and that complainant seeking to acquire an interest in the property, was bound to go further than a mere examination of the record and to ascertain whether those in possession of the surface also claimed the minerals. Respondent cites authorities to sustain the contention that a purchaser is charged with notice of the nature of the title of one in possession of the premises. Those authorities need not be cited here, for that general rule has been often stated by this court and is well known. However, that rule has no application here, for the only instrument on record tending to show any interest in J. M. Garner or his successors in interest was the deed of January 16, 1874, wherein Garner only secured title to the surface and the possession of the surface by Garner's successors in interest was consistent with the record title. While possession by a person having a record title is notice, the purchaser may ascribe the possession to the recorded deed and is not affected with notice of any other undisclosed title or interest which the occupant may have. Otherwise expressed, where the record shows a conveyance under which a person is entitled to possession, his possession will be referred to the record title, and a subsequent purchaser will not be charged by it with notice of any other undisclosed title or equity which the occupant may have. The possession is a matter tending to excite inquiry, but the fact that the occupant has placed upon the public records written evidence of his right, with the terms of which

his possession is consistent, arrests inquiry at that point, and reasonably informs the purchaser that he may rest upon the knowledge thus obtained. 66 Corpus Juris, Vendor and Purchaser, § 1018, p. 1172; 55 American Jurisprudence, Vendor and Purchaser, § 731, p. 1099; Adkins v. Arsht, D. C., 50 F.Supp. p. 761; Rose v. Roberts, 195 Okl. 687, 161 P.2d 851; Schlegel v. Kinzie, 158 Okl. 93, 12 P.2d 223.

The case of Sloss-Sheffield Steel & Iron Co. v. Taff, 178 Ala. 382, 59 So. 658, does not hold to the contrary. In that case there was no deed on record showing the conveyance of any interest in the land to the person in possession at the time the Sloss-Sheffield Steel & Iron Company secured its deed purporting to convey the mineral interests. Under such circumstances, the majority of the court were of the opinion that the duty of inquiry was upon that company at the time it made its purchase; that proper inquiry would have discovered the existence of an unrecorded deed to the deceased husband of the woman in possession, which deed covered the entire interest in the land, although the wife also had an unrecorded deed purporting to convey the surface interest only; that the widow's, or her agent's, possession, even under the deed conveying only the surface interest, was not inconsistent with a possession under the deed to the husband covering the entire interest. That is not this case. As before shown, the deed conveying surface interest only was on record at the time the complainant secured its deed to the mineral interests in the land.

In so far as the evidence discloses, mining operations have never been conducted on the eighty acres of land to which title was quieted by the decree appealed from. It does appear from the evidence that sometime between 1902 and 1907 respondent's father permitted mining operations to be conducted on a part of the land which was covered in the deed of January 16, 1874, wherein Key was the grantor and Garner was the grantee. Respondent's father had purchased a part of the land from Garner. That is the extent of the evidence as it relates to acts tending to show possession by any one of the minerals as distinct from possession of the surface prior to the time complainant secured its deed. Such acts committed more than thirty-four years prior to the time complainant secured its deed could not operate to put complainant upon inquiry as to whether those in possession of the surface claimed any interest in the minerals. To put a purchaser upon inquiry and operate as constructive notice, possession must exist at the time of the transaction by which his rights and interests are created. A possession that has ended before, or commenced after, the sale does not affect the purchaser with notice. Holly v. Dinkins, 202 Ala. 477, 80 So. 861; Wood v. Bowden, 182 Ga. 329, 185 S.E. 516; Webster v. Black, 142 Ga. 806, 83 S.E. 941; 66 Corpus Juris, Vendor and Purchaser, § 1017, p. 1171; 55 American Jurisprudence, § 714, p. 1089.

There was no evidence to support respondent's claim of title to the minerals by adverse possession. After severance of the minerals, in situ, from the surface the possession of the latter is not possession of the former. The effect of the severance is to create two closes, adjoining but separate. The mineral, after severance, is a corporeal hereditament, and mere nonuser will not affect the owner's title; and to lose his right by adverse possession, the owner must be disseised. Hooper et al. v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549, and cases cited. To acquire by adverse possession the title to the mineral interests so severed, there must be an actual taking or use under claim of right of the minerals from the land for the period necessary to affect the bar. Under the authorities, it is essential, to effect adverse possession of the minerals, after severance in title from the surface, that the adverse claimant do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory or temporary acts suitable to the enjoyment and appropriation of the minerals so claimed, and hostile to the rights of the owner. Birmingham Fuel Co. v. Boshell, 190 Ala. 597, 67 So. 403, and cases cited; Hooper v. Bankhead & Bankhead, supra.

We are of the opinion that the evidence fully warrants a finding that the legal title to the minerals is in complainant.

We come now to consider the contention of respondent below, appellant here, that the trial court erred in rendering the decree appealed from for the reason the evidence showed that complainant was not in the peaceable possession of the minerals, inasmuch as respondent was conducting mining operations in, under and upon a part of the land.

As before shown, the original complaint sought to quiet title to the minerals in, under and upon 120 acres of land, including the NW ¼ of the NE ¼ of said Section 34. The evidence for the respondent tended to show that for a period of two years prior to the time the bill was filed and up until the date of trial, he was conducting mining operations in the northeast corner of the NW ¼ of the NE ¼ of said Section 34.

It was this tendency of the evidence which caused the complainant to amend its bill so as to delete that quarter section.

Under Equity Rule 28, Code 1940, Tit. 7 Appendix, generally speaking, a complainant is entitled to amend this complaint any time prior to final decree to meet any state of evidence which will authorize relief.

Although it is conceded that there was no proof of any actual possession by the respondent, or anyone else, of the minerals in, under or upon the land included in the complaint after amendment, the respondent contends that the mining operations conducted in the quarter section deleted by amendment gave the respondent possession of the minerals in, under or upon the entire tract of land and that, therefore, the complainant did not have peaceable constructive possession of any of the minerals and, hence, regardless of the amendment the decree quieting title to the minerals in, under or upon the land included in the complaint after amendment is erroneous.

Some of the deeds from the heirs of J. M. Garner to the respondent purport to convey the grantor's undivided interest to the minerals in, under or upon the land described in the original bill of complaint, including that to which title was quieted in complainant by the decree from which this appeal is taken. Irrespective of the fact that the grantors in such deeds had no title to the minerals, the deeds would give color of title. Ryan v. Kilpatrick, 66 Ala. 332; Hoyle v. Mann, 144 Ala. 516, 41 So. 835. A deed may be color of title, though the purported grantor was not in possession. McBride v. Lowe, 175 Ala. 408, 57 So. 832.

On the theory that he has color of title to the minerals, respondent invokes the principle often declared in cases where surface rights were involved, to the effect that actual possession of part of the tract of land, with claim of title to the whole, under a written instrument, is sufficient to constitute possession of the whole tract defined in the conveyance, to the extent that the same is not in the actual possession of another. Black v. Tennessee Coal, Iron & R. Co., 93 Ala. 109, 9 So. 537; Buck v. Louisville & N. R. Co., 159 Ala. 305, 48 So. 699; Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174; Marsh v. Gragg, 228 Ala. 269, 153 So. 219.

Our research discloses no case where this court has been called upon to pass on the question as to whether the principle above stated has application to mining operations. However, that question has arisen in other jurisdictions, where it was held that the principle does not apply to mining operations. French v. Lansing, 73 Misc. 80, 132 N.Y.S. 523; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394; Davis v. Federal Land Bank of Columbia, 219 N.C. 248, 13 S.E.2d 417.

We quote from the case of French v. Lansing, supra, 132 N.Y.S. 526, as follows:

"These rules apply to adverse possession of the surface, and form no guide, even by analogy, to such a case as the present. They all contemplate some sort of notice to the true owner and possession and dominion of one kind or another over the whole of the premises claimed adversely. Where there is such known farm or lot with defined boundaries, the partial improvement may fairly be said to give warning of a claim to the whole, and to constitute possession of the whole.

"The same thing cannot be said to result from the opening of a quarry for gypsum or limestone or the driving of a gallery into a vein of coal. In either case, what claim is made or what possession is there

of the minerals beyond the face of the quarry or the end of the vein? If a coal mine, is there possession and claim of the entire vein no matter how far the same may extend? In the case at bar, if there is adverse possession, it covers at least the 200 acres deeded to Otis; for it is to be observed that the act of Otis and his grantees in subsequently dividing the surface is not notice of any kind to Wickham and his heirs. One of the tests of adverse possession under a claim of title is whether or not it is such as enables the possessor to maintain trespass against a stranger. If A. opened a quarry on the south end of these 200 acres, could he maintain an action in trespass against B. who, subsequently, opened a quarry at the north end thereof? Or, suppose B. opened a coal mine. Without, however, deciding definitely just how, if at all, adverse possession of minerals separated from the surface can be obtained, it is probably enough to hold here that the mere opening of a quarry, *with or without a written claim of title,* did not constitute adverse possession as against Wickham and his heirs of the gypsum situated beyond the quarry." (Emphasis supplied).

In Piney Oil & Gas Co. v. Scott, *supra,* 79 S.W.2d 400–401, it was said:

"A would-be disseisor who enters under a bare color of title is no better off than one who enters without color and marks off a distinct line around what he intends to occupy. Each, if he acquires any rights, must do so because of his occupation, claim, and use of the premises for the statutory period.

"A disseisor upon the surface may actually build upon, occupy, and use but a portion of the territory embraced within his marked line or color, but he has an immediately potential use and occupancy of the remainder of his claim, and the law by construction extends his actual occupation over it, but, when he gets below the surface and attempts to take possession of minerals, he can have no immediately potential use or occupation of the whole of the minerals over which the law can by construction extend his actual *possession*; therefore he can have no possession of the unmined portion. Their possession was never in advance of their operations, unless they surrounded a block; then they had possession of that block, but no more. They got no more than they loosened or around which they had established a confine. By their operations they may have pushed the mineral owner back, but they have never pushed him off. To disseise the title holder, they must push him off and keep him off. See Plinn v. Blakeman, 254 Ky. 416, 71 S.W.2d 961. They could have no actual possession until they had a potential possession, and they have never had any potential possession of the coal that has not been disturbed. The same is true of all of the defendants."

We recognize the fact that we are not here dealing with a question of adverse possession and that we have said that, touching a possession which will defeat a bill filed under the statute to quiet title, it is not necessary to show such character of adverse possession as would ripen into title, but such possession as would amount to a disputed title. Crabtree v. Alabama State Land Co., 155 Ala. 513, 46 So. 450; Holland v. Coleman, 162 Ala. 462, 50 So. 128. But we are not concerned here with this character of possession, that is, the nature of the possessory acts, but with the territorial limit to which isolated mining operations should be extended.

We are of the opinion that the reasoning underlying the holdings in the cases from other jurisdictions, from which we have quoted above, impels us to the conclusion that the mining operations conducted by the respondent in the NW $\frac{1}{4}$ of the NE $\frac{1}{4}$ of Section 34 cannot be said to have put him in possession of the minerals in, under or upon the lands included in the bill of complaint as amended.

We hold that the evidence shows the complainant has the legal title to the minerals and it was in the peaceable constructive possession thereof. It follows that the decree of the trial court should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.