512 So.2d 1297 (1987)
Jack Randall WHITEHEAD and Mae M. Whitehead
v.
Walston HESTER, Jewell Hester, and T.E. Farned.
CHAMPION INTERNATIONAL CORPORATION
v.
Walston HESTER, Jewell Hester, and T.E. Farned.
Nos. 85-526, 85-529.
Supreme Court of Alabama.
March 27, 1987.
Rehearing Denied May 15, 1987.
As Modified on Denial of Rehearing August 21, 1987.
*1298 Roger H. Bedford, Sr., of Bedford, Bedford & Rogers, Russellville, for appellants Whitehead.
Jerry C. Porch, Russellville, and J. Robert Fleenor of Bradley, Arant, Rose & White, Birmingham, for appellant Champion Intern. Corp.
Joe Fine and David Neal of Fine & Associates, Russellville, for appellees.
MADDOX, Justice.
Walston Hester, Jewell Hester, and T.E. Farned (hereinafter "Hester and Farned") filed a bill to quiet title to a mineral interest in land located in Franklin County against Jack Randall Whitehead, and May M. Whitehead ("the Whiteheads") and Champion International Corporation ("Champion"). The Whiteheads and Champion filed motions to dismiss, alleging that the complaint failed to state a claim upon which relief could be granted. The trial court overruled the motions to dismiss. The Whiteheads and Champion then filed a motion for summary judgment, which the trial court also denied.
The trial court conducted a hearing at which certain stipulations of fact were made and certain documentary evidence and exhibits were admitted. There was no oral testimony. The trial court held, after consideration of the pleadings, testimony, exhibits, and stipulations, that a deed existed which conveyed a separate mineral estate to a grantee other than the owner of the surface estate; that, through various conveyances that mineral interest came to Hester and Farned; and that paramount legal title to the minerals was vested in Hester and Farned. The trial court further found from the evidence that Hester and Farned and their predecessors in interest had held exclusive title to the subject mineral interest since the conveyance of that interest by a quitclaim deed in 1892. The Whiteheads and Champion filed a motion to alter, amend, or vacate the judgment, which was overruled. The Whiteheads and Champion each appealed. We affirm.
The subject land is located in the Southwest ¼ (SW ¼) of Section 32, Township 8 South, Range 15 West, Franklin County, Alabama. The parties derive their respective claims of title to the minerals under two separate chains of title which do not emanate from a common grantor and which are not traced back to a patent from the United States. The land was conveyed by the United States to Elijah Bullen by patent dated December 9, 1844, but a break in each party's chain of title exists, because in 1890, a fire destroyed the courthouse in which land records were maintained in Franklin County. See Appendix A for a diagram of the separate chains of title.
Hester and Farned claim ownership of the mineral interest in the subject property by virtue of a direct and unbroken chain of conveyances commencing in 1892. The original conveyance, a quitclaim deed, dated October 7, 1892, from Sheffield Land, Iron & Coal Company ("Sheffield") to John C. Cheney is the first documentary evidence *1299 in the record which shows a transfer of the subject properties or the mineral estate therein following the destruction by fire of all records of title maintained in Franklin County in 1890. The quitclaim deed from Sheffield to Cheney was made in consideration of payment by Cheney of several hundred thousand dollars and specifically covered "the mineral interest [owned by Sheffield in the] SW ¼ of Section 32; [other described lands] ... all in Township 8 Range 15." Each successive deed in Hester and Farned's chain of title following this conveyance was recorded in Franklin or Colbert County, although some of the conveyances were filed of record many years after they were executed, and each succeeding conveyance transfers the subject mineral estate. (Appendix A shows the date of recordation of each conveyance). Hester and Farned, and those through whom they claim, did not assess or pay taxes on the mineral interest claimed by them until 1980. Since 1980, Hester and Farned have assessed to them and paid twice the taxes on the mineral interest claimed.
The Whiteheads and Champion trace their surface ownership through a chain of conveyances commencing with a warranty deed from W.H. Tipton and wife to J.A. Thorn, dated October 27, 1906, which was 14 years after the initial quitclaim deed conveying the mineral interest to Hester and Farned's predecessor. The Whiteheads and Champion (and their predecessors in interest) have assessed and paid taxes for various periods of time from the initial acquisition of their surface chain of title in 1906. Taxes were paid on the subject property from 1906 to 1915 and from 1926 until the time suit was filed, but no separate assessment was made for the mineral estate.
The issues raised by the Whiteheads and Champion on appeal are: (1) whether the trial court erred when it failed to grant the motions to dismiss and the motion for summary judgment; (2) whether the trial court erred in finding that a separate mineral estate existed, and that legal title to the minerals was vested in Hester and Farned; and (3) whether the trial court erred in not holding that Hester and Farned were barred by the rule of repose.
As earlier stated, the trial court decided this action based upon the pleadings, stipulations, documentary evidence, and exhibits, and no oral testimony was taken; consequently, the ore tenus rule is not applicable in this case, and findings of fact made by the trial court are not entitled to the traditional presumption of correctness which is available when the trial court hears oral testimony and observes the witnesses. Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45 (Ala.1980); Perdue v. Roberts, 294 Ala. 194, 314 So.2d 280 (1975). We must consider the evidence anew and render a judgment in light of the evidence and the applicable legal principles. Perdue v. Roberts, supra.
It is well settled law in this state that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Rule 12(b), Ala.R.Civ.P.; Fontenot v. Bramlett, 470 So.2d 669 (Ala.1985). When reviewing a motion to dismiss for failure to state a claim, this Court resolves all doubts in favor of the plaintiff. Rice v. United Ins. Co. of America, 465 So.2d 1100 (Ala.1984).
A summary judgment is proper only when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Whitehead v. Davison Oil Co., 352 So.2d 1339 (Ala.1977).

I
The parties disagree on the nature of the action filed by Hester and Farned, which they styled as one seeking injunctive relief and a declaration concerning the ownership of the mineral interests underlying the property situated in Franklin County. The Whiteheads and Champion contend that this was an action to quiet title under the provisions of the Grove Act, Code 1975, § 6-6-560, et seq., and that Hester and Farned failed to allege and prove that they came within the provisions of that statute.
*1300 Hester and Farned claim that the argument by the Whiteheads and Champion concerning the applicability of the Grove Act is raised for the first time on appeal, but they answer the argument regarding the applicability of the Grove Act by contending that their complaint is not governed by the provisions of the Grove Act.
In any event, there is only one form of action in Alabama, known as a "civil action," in which all claims between the parties should be litigated. DuBoise v. Brewer, 349 So.2d 1086 (Ala.1977); Rule 2, Ala.R.Civ.P.
Alabama law, even prior to the effective date of the Alabama Rules of Civil Procedure, was to the effect that the character of a pleading was determined by its essential substance and not from its description, name, or title. See, Guaranty Funding Corp. v. Bolling, 288 Ala. 319, 260 So.2d 589 (1972); Union Springs Tel. Co. v. Green, 285 Ala. 114, 229 So.2d 503 (1969).
Even if the designation of a pleading is incorrect, it will not result in any penalty against the pleader under our Rules of Civil Procedure. See, Swain v. Terry, 454 So.2d 948 (Ala.1984); Ex parte Jones, 447 So.2d 709 (Ala.1984).
The precise point applicable to the instant appeal was addressed by this Court in Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962), wherein the Court opined:
"An amendment to a bill in equity does not depart from the original purpose of the bill if it seeks to adjudicate property rights, between the same parties, as the result of the same transaction though presenting different versions of fact and calling for application of different legal principles and molding of relief in different form." (Emphasis added.)
273 Ala., at 412, 142 So.2d, at 661-62. The Court continued, stating:
"It was held in Sloss-Sheffield Steel & Iron Co. v. Yancey, 201 Ala. 200, 77 So. 726, that a bill to quiet title brought under the statute, Sections 5443 and 5446, Code of 1907, now Section 1109, et seq. of Title 7, Code of 1940 [code provisions antedating Section 6-6-540, et seq., Title 12, Code of 1975, relied on by Appellants] could be converted into a bill to remove a cloud from title, and that the change was not such as to constitute a departure." (Citations omitted). (Emphasis added.)
Id., 273 Ala. at 412, 142 So.2d at 662.
We are of the opinion that Hester and Farned, who alleged that they held legal title to the mineral interest in the subject property, were entitled to the remedy set forth in their pleadings that the trial court "quiet title in and to the mineral interest in the subject property in the names of the plaintiffs...."
In Smith v. Gordon, 136 Ala. 495, 34 So. 838 (1902), complainants had filed a bill in equity to compel a determination of claims and to quiet title to a mineral interest in land. The Court said:
"The appeal in this case is taken from an interlocutory decree overruling respondents' (appellants here) demurrer to the bill as amended, and their motion to dismiss the same for want of equity. The purpose of the bill as originally filed was to remove cloud from complainant's alleged title to the mineral rights in the land described, and as subsequently amended was converted into a bill under the statute (Code [1896], §§ 809-813) [now Code 1975, § 6-6-540] to compel the determination of claims and quiet title to the mineral interest and rights in said lands. The relief sought by the original bill, and that by the bill as amended, was of a kindred nature. The change wrought by the amendment was not of such a radical character as to constitute in pleading a departure...."
136 Ala. at 497, 34 So. at 838.
We are of the opinion that the allegations of the complaint in this cause were sufficient to allege a claim under the provisions of Code 1975, § 6-6-540, et seq.
Code 1975, § 6-6-540, provides:
"When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in *1301 his own right or as personal representative or guardian, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim or encumbrance, such person or his personal representative or guardian, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same. (Code 1896, § 809; Code 1907, § 5443; Code 1923, § 9905; Code 1940, T. 7, § 1109.)"
The parties stipulated that there had been no actual possession of the subject mineral interest because there has never been any severance of the minerals. In Chestang v. Tensaw Land & Timber Co., 273 Ala. 8, 134 So.2d 159 (1960), this Court recognized that "[u]sually, there is no actual possession [of mineral rights involved in suits to quiet title], and in such cases, title draws to it constructive possession, and the party with the better title is also in possession." (Emphasis added.)
We believe the complaint here sufficiently alleged that the plaintiffs were in "constructive possession." That term, as used in § 6-6-540, has been defined as that possession which the law annexes to the legal title or ownership of property, when there is a right to immediate actual possession. Brunson v. Bailey, 245 Ala. 102, 16 So.2d 9 (1943).
Unquestionably, a complaint may be properly filed under § 6-6-540 to quiet title to the mineral interest in land by the owner of the interest. Sanford v. Alabama Power Co., 256 Ala. 280, 54 So.2d 562 (1951). Consequently, the trial court did not err in denying the defendants' motions to dismiss; and because the question of who owned the mineral interest was a genuine issue of material fact, the trial court properly denied the defendants' motion for summary judgment, Rule 56(c), Ala.R.Civ.P.

II
The Whiteheads and Champion next argue that there is no basis in the record for the court's finding of a severance of the mineral interest from the surface estate or the finding that legal title to the minerals was vested in Hester and Farned.
We are of the opinion that the trial court was justified in finding that Hester and Farned, and their predecessors in interest, have held exclusive title to the subject mineral estate for the entire period from 1892 to the present. There was never any disseisin or surrender by Hester and Farned, or their predecessors, of the mineral interest following its severence from the surface estate by the quitclaim deed. Because there has been no actual possession of the mineral interests by either Hester and Farned or the Whiteheads and Champion, the law ascribes possession to him who holds paramount legal title. See, Gurganus v. Kiker, 286 Ala. 442, 241 So.2d 113 (1970).
Champion argues that the record shows without dispute that the Sheffield quitclaim deed is ineffective to transfer title, because there is no evidence which traces title back to the United States or to a common grantor. Of course, neither side in this case can trace its title back to the sovereign or to a common grantor because of the total destruction of all the land records by the 1890 fire that also destroyed the Franklin County Courthouse.
We cannot accept the assertion that Sheffield was not the holder of legal title to the land and was not legally empowered to sever the mineral interest, under the facts of this case. The first conveyance covering the disputed mineral interest which was filed for record after the destruction of county records by fire was the conveyance in 1892 from Sheffield to John Cheney. This conveyance was competent and relevant evidence of a separate mineral estate, in which Sheffield claimed an interest. Since the conveyance from Sheffield to Cheney in 1892, the mineral interest has passed through a clear and unbroken chain of title directly to Hester and Farned. If the argument of the Whiteheads and Champion were sustained, then one who acquired *1302 a mineral interest created in Franklin County prior to 1890 might have difficulty in establishing the validity of his title. To require Hester and Farned to somehow locate the originals of the instruments that were destroyed in the fire and, thus, establish their chain of title from the present date completely back to a government patent or to a common grantor, would place an unreasonable burden on them, or on others similarly situated.
The initial conveyance in the Whiteheads' and Champion's chain of title was from W.H. Tipton to J.A. Thorn in 1906. Again, because of the destruction of the courthouse records by fire, there is nothing in the records to indicate that W.H. Tipton had any title whatsoever to convey in 1906. After the patent in 1844, the next conveyance concerning the subject property filed for recordso far as the present records indicatewas the 1892 quitclaim deed from Sheffield to Cheney. Some 14 years later, the Whiteheads' and Champion's chain of title begins with a deed from one W.H. Tipton to J.A. Thorn. In such circumstances, when dealing with two separate and distinct titles to the same property, as here, the Court should acknowledge the superiority of the title of those obtaining interests by the earliest recorded instruments. Pollard v. Simpson, 240 Ala. 401, 199 So. 560 (1941). In that case, the Court was faced with two conflicting titles, one commencing in 1886 and showing title to the minerals involved in the suit, and another commencing four years later, in 1890, and reflecting a claim to ownership in the surface and the mineral estate. There, the Court set out the disputed claims and the principle of law to be applied, as follows:
"The parties to this cause have made an agreement, which is set out in the record, to the effect that complainant claims record title to the minerals involved in this suit, by and through conveyances beginning with a deed from Robert Blythe and others to F.M. Thomason and others, bearing date December 11, 1886, and through mesne conveyances to the Central of Georgia Railway Company by deed of the Tunnell Coal Company dated July 28, 1905.
"Respondents claim record title to the northwest quarter of the northwest quarter of section 8, township 16, range 2 east, together with the minerals in, on or under the same, by and through conveyances beginning with a deed from P.F. Hawkins and others to L.V.B. Hawkins [Simpson], bearing date of January 7, 1890, and through mesne conveyances to Mrs. M.L. Simpson by deed of L.V.B. Simpson, dated October 11, 1912; and record title to an undivided one-half interest in and to the northeast quarter of the northwest quarter of section 8, township 16, range 2 east, together with the minerals in, on or under said lands by and through conveyances beginning with a deed from P.F. Hawkins, and others, to L.V.B. Simpson, bearing date January 7, 1890, and through mesne conveyances to J.A. Simpson by deed of Alice C. Adkins and husband dated April 29, 1919, and to the other undivided one-half interest in said lands and minerals by and through the deed from P.F. Hawkins, and others, to L.V.B. Simpson, and through inheritance from L.V.B. Simpson, the father of J.A. Simpson.
"The case was submitted to the court below on the original bill as amended, the answer of the respondents, the agreement of the parties and the testimony noted by the register. The lower court entered a decree denying the relief prayed for, and dismissed the bill without prejudice; and complainant appeals.
"The respondents base their claim of title to the minerals here involved on adverse possession for the required statutory period.
"It is insisted by appellant that two adverse claimants cannot have possession of the same identical property at the same time, and that respondents failed to prove adverse possession because the evidence discloses a `joint possession' of the minerals involved by J.A. Simpson and Mrs. M.L. Simpson, husband and wife.
"We do not so interpret the evidence. When all the evidence is considered together it tends to establish the fact that Mrs. M.L. Simpson owned the minerals *1303 in, on or under the northwest quarter of the northwest quarter of section 8, and that J.A. Simpson owned the minerals in, on or under the northeast quarter of the northwest quarter of section 8. If these facts are established by the evidence, they will constitute a bar to the relief prayed for in the bill.
"The deed from Robert Blythe and others to F.M. Thomason, dated December 11, 1886, and which is the source from which complainant claims title, shows a severance of the minerals here involved from the surface. Therefore, the respondents must show such adverse possession of the minerals, as distinguished from adverse possession of the surface, as will ripen into title, in order to defeat complainant's record title. After severance of the minerals, in situ, from the surface, the possession of the latter is not possession of the former. The effect of the severance is to create two closes, adjoining but separate. Hooper et al. v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549, 551, and authorities there cited.
"What, then, will constitute adverse possession of minerals severed in title from the soil?
"In the case of Hooper et al. v. Bankhead & Bankhead, supra, this court said: `Such a possession (adverse) must be actual, notorious, exclusive, continuous, peaceable and hostile for the statutory period. And in these respects the surface owner is in no better position than a stranger. * * * Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous, or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or require. A cessation of operations in accordance with the custom of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession. But there must be something evidencing possession in the interval which connects the operations when resumed with those which have gone before, and to distinguish such possession from a series of repeated acts of trespass.' Barringer and Adams on Mines, pages 568, 569; White on Mines, sections 430, 431, 432, and 433.
"It is essential to effect adverse possession of minerals, after severance of title from the surface, that the adverse claimant do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory or temporaryacts suitable to the enjoyment and appropriation of the minerals so claimed, and hostile to the rights of the owner."
240 Ala. at 402-03, 199 So. at 561-562.
It is true that Hester and Farned are unable to show a conveyance to Sheffield because of the destruction of the records in Franklin County in 1890; nevertheless, the first deed of record after the fire, from Sheffield to Cheney, does indicate a severance of the mineral estate and a claim to the mineral estate on the part of the grantee of Sheffield and the grantee's successors and assigns. The subsequent conveyances by the assignees of John Cheney to Hester and Farned, all of which convey the mineral interest now in dispute, establish the paramount legal title of appellees and entitle them to the relief granted them by the trial court. Pollard, supra.

III
Champion also asserts that the claim of title of Hester and Farned should be barred by the rule of repose since Hester and Farned's claim of title was undisclosed by the public records. There was evidence which, if believed, shows otherwise. An abstract introduced in evidence indicates that the chain of title for the S ½ of the SW ¼ of Section 32 is contained in pages 1 through 45. The abstract then indicates that pages 46 through 90 are the chain of title to the N ½ of the SW ¼ of Section 32. Finally, the abstract indicates that pages 91 through 135 "are the chain of title for the mineral interest of T.E. Farned and wife, Irma Farned, and Walston Hester and wife, Jewel Hester, for the SW ¼ of Section 32." The affidavit of Larry Prince, an experienced abstracter in Franklin County, *1304 indicates that his examination of the records in Franklin and Colbert Counties had indicated an unbroken chain of title covering the mineral interest disputed in the case at bar from Sheffield Land, Iron & Coal Company in 1892 down to Hester and Farned.
The evidence was sufficient to dispute the Whiteheads' and Champion's assertions that they had no notice, actual or constructive, that Hester and Farned's chain of title was duly recorded among the records of Franklin and Colbert Counties. Section 35-4-63, Code 1975, clearly provides that "recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record operates as a notice of the contents of such conveyance or instrument without any acknowledgment or probate thereof as required by law." Notice of facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of these facts. See generally, Jackson Co. v. Faulkner, 55 Ala.App. 354, 315 So.2d 591 (1975); Vaughan v. Fuller, 278 Ala. 25, 175 So.2d 103 (1965). In the case at bar, it is apparent that the trial court was authorized to find that the Whiteheads and Champion, in the exercise of reasonable diligence, should have had adequate notice of the mineral interest claimed by Hester and Farned and their predecessors. The original conveyance in Hester and Farned's chain of title severing the mineral estate from the surface appears in 1892 and has been of record in Franklin County for over ninety years. The Whiteheads and Champion had knowledge of facts sufficient to provoke inquiry as to the source of Hester and Farned's title, and could have ascertained their source had they instituted sufficient inquiry.
This case is unique in that the records of title in the courthouse burned. Appendix A, which is attached, showing the chains of title of both sets of parties, shows, without question, that there is a break in the chain, which is caused by the fact that the records of title were burned in a fire. Consequently, of necessity, this case, is one in which the parties cannot trace their chains of title back to a common grantor. If, of course, Whitehead and Champion had been able to trace their titles back to a patent from the United States, and there was nothing filed of record in that chain of title which would indicate that the mineral interest had been severed, the result we reach here would be different. See Sanford v. Alabama Power Co., 256 Ala. 280, 54 So.2d 562 (1951).
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
JONES, ALMON, BEATTY and STEAGALL, JJ., concur.
TORBERT, C.J., and SHORES and HOUSTON, JJ., dissent.
ADAMS, J., not sitting.
*1305 
HOUSTON, Justice (dissenting):
I respectfully dissent.
The majority correctly states the applicable standard of review. We must consider the evidence anewfree from the assumptions of correctness which the ore tenus rule would impose upon usand render a judgment in light of the evidence and the applicable legal principles. Perdue v. Roberts, 294 Ala. 194, 314 So.2d 280 (1975).
Section 6-6-560, Code 1975 (the Grove Act), can be used to clear title to severed mineral interests, Shelton v. Wright, 439 So.2d 55 (Ala.1983); Edmonson v. Colwell, *1306 504 So.2d 235 (Ala.1987), if there is strict compliance with the requirements set forth therein.
However, in this case, the trial court would have erred in failing to grant the motion to dismiss and the motion for summary judgment, if this action had been brought under § 6-6-560, Code 1975, since (1) the plaintiffs, Hester and Farned, were not in the actual, peaceable possession of the minerals and the defendants were in the actual possession of the surface under a warranty deed which I find from the evidence did not exclude the minerals in the quarter section in dispute (SW ¼ of Section 32, Township 8 South, Range 15 West, Franklin County, Alabama), and were, therefore, in possession of the minerals; (2) Hester and Farned had not paid taxes for the 10-year period preceding the filing of the action, and I find that the defendants and their predecessors in title had paid taxes for 59 consecutive years immediately preceding the filing of this action.
The majority concludes that the trial court had original equity jurisdiction over Hester and Farned's interest for an adjudication of their ownership of the subject mineral interest. In Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962), we wrote that the enactment of what is now § 6-6-560, Code 1975, did not take away the jurisdiction of equity to remove a cloud from title which the equity courts had prior to the passage of the statute. In Long v. Ladd, supra, the plaintiff was in possession of the property and had paid taxes on the property.
In Taylor v. Gray, 265 Ala. 279, 281, 90 So.2d 778 (1956), we wrote:
"Possession is necessary on behalf of complainant to quiet title no matter if statutory or original jurisdiction of court of equity is exercised, except that a remainderman not in possession, and with no right to the immediate possession, may maintain a bill to remove a cloud from his remainder interest...." (Emphasis added.)
That exception is not present here.
Therefore, the majority opinion is extending the jurisdiction of a trial court beyond that of the original jurisdiction of a court of equity. I do not think that it should be so extended; and, therefore, in my opinion the trial court erred to reversal by not granting the motion to dismiss and then again in not granting the motion for summary judgment.
This action was decided by the trial court upon the pleadings, stipulations, documentary evidence, and exhibits offered by the parties; no oral testimony was taken, and the facts were not disputed. Therefore, the ore tenus rule is not applicable.
I am persuaded that the trial court erred to reversal in not holding that Hester and Farned were barred by the rule of repose from asserting a claim to the mineral interest, when they and those through whom they claim failed to assess and to pay ad valorem taxes on that mineral interest or to take possession of the minerals for more than 20 years prior to filing this suit. Shelton v. Wright, 439 So.2d 55 (Ala.1983). See also Emondson v. Colwell, supra. Hester and Farned contend that their chain of title goes back to 1892. Therefore, they and their predecessors had color of title to the minerals, without assessing them for ad valorem taxes for 88 years or making the one time payment in lieu of ad valorem taxes under § 40-20-35, Code 1975, to the Judge of Probate of Franklin County. They and their predecessors had color of title to the minerals, without acts of possession for 93 years prior to filing this action. Their action is barred by our rule of repose. Shelton v. Wright, supra.
My dissent is based only upon Hester and Farned's lack of standing and upon the Alabama rule of repose. However, I would be remiss if I did not express my concern about the effect that the majority's opinion will have on title examination in this state. Champion and its predecessors in title had, for 59 consecutive years, assessed the property for ad valorem taxes and had paid taxes for those years, without the minerals being excluded. Champion and its predecessors in title were in possession of the surface of the property continuously for 78 years, with warranty deeds which did not except or exclude minerals in that property. *1307 For 93 years, Hester and Farned and their predecessors did nothing but rely upon the recordation of a quitclaim deed to minerals. Unless the title examiner can find that perfect chain of title from the present date back to the United States of America or has checked every deed in the appropriate probate office, he cannot be sure that there is not a superior mineral interest which is not evidenced by assessment or payment of taxes or possession.
TORBERT, C.J., and SHORES, J., concur.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
Both appellants filed applications for rehearing in which they contend once again that the appellees failed to prove that a holder of the legal title to the mineral estate had severed that estate. Of course, this point is discussed at length in the original opinion, and we need not discuss that point further except to say, as Champion admits in its brief on application for rehearing, that "neither party relying solely on his paper title can prove that he holds the legal title to the mineral interest separate from the surface since neither party can trace his paper title from a grantor in possession or a common source or by an unbroken chain from the government." (Emphasis added.)
Champion argues:
"This Court should decide title disputes, but some better basis for a decision than the fist recorded deed should be found. It is just as reasonable to assume that Tipton, the first grantor in Champion's chain of title, who conveyed the land in fee simple by warranty deed, rather than merely quitclaiming any interest he might have, was in actual possession under a recorded deed which was destroyed by the fire as it is that a recorded deed to Sheffield Land & Coal Company was destroyed by the same fire, particularly in view of the failure of the latter and its successors to assess and pay taxes for some 90 years. In these circumstances, where neither party is in actual possession or can prove legal title, the Court should recognize that as it did in Shelton v. Wright, 439 So.2d 55 (1983), and look to other indicia of ownership, such as those suggested by the Grove Act, see IV Ala.L.Rev. 307, or legal principles to resolve the dispute."
In Shelton v. Wright, 439 So.2d 55 (Ala. 1983), cited in the dissent on original deliverance, there were two mineral deeds from the same grantor, both acknowledged by the same attorney. The first deed conveyed the mineral rights to the appellants' predecessors in title, and reserved a vendor's lien. The grantees of the first deed never assessed the mineral interests for taxes and did not lease the interests to another or otherwise manifest any signs of ownership for more than 60 years, and the grantees of the second deed, which was executed only a year after the first deed, promptly assessed the mineral interests and continued to do so down through the years. In that case, this Court did hold that the trial court did not err in finding that title to the mineral interests was in the grantees under the second deed. There, this Court said: "[T]he implication arises that the grantor in these two deeds foreclosed his lien against the appellants' predecessors and conveyed the mineral interests to the appellee's predecessors." 439 So.2d at 59.
Champion asks us to apply equitable principles applied in Shelton and hold that the title to the mineral interest should be quieted in it. We considered this principle on original deliverance, but we do not find the trial court erred, because there was evidence before the trial court in this case that there was an unbroken chain of title from Sheffield Land, Iron & Coal Company from 1892 down to Hester and Farned.
Furthermore, in Shelton there was justification for applying the rule of repose under the circumstances of that case. Here, the trial judge found, and we find, that the circumstances are different; therefore, Shelton is distinguishable on its facts.
*1308 Champion further voices concern about how this opinion will affect title examinations in this state. We cannot share the fear expressed by Champion because, on original deliverance, we indicated the uniqueness of this case. A fire had destroyed the courthouse records. We cannot believe that the factual situation here will be a common occurrence in the state of Alabama, and even if there are other instances where the record title has been destroyed by fire, as it has here, one or the other of the parties may be able to produce an original deed which traces title back to a common source or to the United States.
OPINION EXTENDED; APPLICATION OVERRULED.
JONES, ALMON, BEATTY and STEAGALL, JJ., concur.
TORBERT, C.J., and SHORES and HOUSTON, JJ., dissent.
ADAMS, J., not sitting.

ON SECOND APPLICATION FOR REHEARING
MADDOX, Justice.
OPINION ON FIRST APPLICATION FOR REHEARING MODIFIED; SECOND APPLICATION FOR REHEARING OVERRULED.
JONES, ALMON, BEATTY and STEAGALL, JJ., concur.
TORBERT, C.J., and SHORES and HOUSTON, JJ., dissent.
ADAMS, J., not sitting.