BRYAN, Justice.
This case began as an interpleader action filed by El Paso E & P Production, L.P. (“El Paso”), to determine who owns the mineral interest in a piece of property located in Walker County, Alabama (“the Landon parcel”), on which El Paso operates a methane well.[1] The competing claimants for the mineral interest *337 are Simmons Group, LTD (“Simmons Group”), on the one hand, and the Caine O’Rear, Jr. Family Trust, Mary Lou Foy, Susan Foy Spratling, Paula Robertson Rose, Stacy Baker Carson, and Warren Dane Baker (hereinafter referred to collectively as “O’Rear”), on the other hand. Simmons Group claims ownership by an unbroken chain of conveyances starting with an 1883 quitclaim deed from one Elizer Taylor to Musgrove Bros, purporting to convey the mineral interest (“the 1883 deed”). O’Rear claims ownership by a separate chain of conveyances originating in the adverse possession of the Landon parcel by one J.K.P. Chilton and allegedly ripening into ownership sometime before 1921. O’Rear does not argue that Chilton adversely possessed the mineral interest separate from the surface estate.[2] Rather, O’Rear argues that the 1883 deed did not validly convey the mineral interest and that the mineral interest was not severed from the surface estate until after Chilton adversely possessed the Landon parcel.[3] O’Rear does not dispute Simmons Group’s chain of title subsequent to the 1883 deed. Thus, it is undisputed that, if the 1883 deed validly conveyed the mineral interest to Musgrove Bros., Simmons Group is the rightful owner. Ownership of the mineral interest is the dispositive issue in this case.
The case was tried before the circuit court upon stipulations, admissions of fact, and briefs. The court did not hear oral testimony. The circuit court determined that Chilton had adversely possessed the Landon parcel with the mineral interest still attached and that O’Rear therefore owns the mineral interest.
Standard of Review
Because the circuit court did not hear oral testimony, our standard of review is de novo. § 12-2-7, Ala. Code 1975 (“[I]n deciding appeals, no weight shall be given the decision of the trial ¡judge upon the facts where the evidence is not taken orally before the judge, but in such cases the Supreme Court shall weigh the evidence and give judgment as it deems just.”). See also Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala. 1999) (stating that “where no testimony is presented ore tenus, a reviewing court will not apply the presumption of correctness to a trial court’s findings of fact and ... the reviewing court will review the evidence de novo”).
Discussion
Neither Simmons Group nor O’Rear can trace its chain of title to Landon, the original owner. Indeed, there is a break in the chain of title to the Landon parcel because in 1877 a fire destroyed the Walker County courthouse along with the Walker County land records. Consequently, Simmons Group argues that its chain of title, which begins with the 1883 deed, is superior to O’Rear’s under Whitehead v. Hester, 512 So.2d 1297 (Ala. 1987). In Whitehead, this Court held that when all land records have *338 been destroyed, the first conveyance recorded thereafter becomes the new beginning point of the chain of title. In this case, the first recorded conveyance subsequent to the total destruction of the land records in Walker County is the 1883 deed.
O’Rear argues that Whitehead is distinguishable from the present case for two reasons. First, O’Rear argues that Simmons Group failed to establish that all land records in Walker County were destroyed in the 1877 fire and that, therefore, Whitehead does not apply. Second, O’Rear argues that the evidence shows that Elizer Taylor did not own the mineral interest when she executed the 1883 deed and that the deed was therefore ineffective to sever the mineral interest from the surface estate.
I. Destruction' of the Walker County Land Records
This Court based its decision in Whitehead on the fact that “neither side in th[at] case [could] trace its title back to the sovereign or to a common grantor because of the total destruction of all the land records by the 1890 fire that also destroyed the Franklin County Courthouse.” Whitehead, 512 So.2d at 1301. O’Rear argues that Simmons Group failed to establish that*all the land records were destroyed in the 1877 fire and that, therefore, Whitehead is inapplicable. We disagree. It is undisputed that the Walker County courthouse burned to the ground in 1877. Furthermore, the record on appeal contains no evidence of any land records having survived that fire. The total destruction of the building housing the county records, along with the absence in the record of any surviving records, is substantial evidence that the Walker County land records were totally destroyed in the 1877 fire. O’Rear has offered no evidence to suggest that any records survived. Accordingly, the rule from Whitehead applies to reestablish the beginning point of the chain of title to the disputed mineral interest.
II. Evidence That Elizer Taylor Did, Not Own the Mineral Interest in 1883
Under' Whitehead, this Court presumes that the first recorded conveyance after the total destruction of land records to a property is the beginning point of a disputed chain of title. The Court looks to instruments that actually purport to convey an interest, rather than instruments merely concerning ownership of the land.[4] This is because the purpose of the Whitehead rule is to bring clarity to title disputes where the best evidence of ownership—he., the intact chain of title—is lost.[5] Only instruments that actually purport to convey an interest can serve the purpose of Whitehead; instruments that, by their terms, cannot convey an interest also cannot form part of the chain of title. Furthermore, by pinning the new beginning point of the chain of title to the first conveyance recorded after the destruction of the land records, the Whitehead rule protects parties from undertaldng the onerous task of showing who owned certain property more than a century after the best evidence of ownership has been lost. As the Court stated in Whitehead:
*339 “To require • [the- parties] to somehow locate the originals of the instruments that were destroyed in the fire and, thus, establish their chain of title from the present date completely back to a government patent or to a common grantor, would place an unreasonable burden on them, or on others similarly situated.”
512 So.2d at 1302.
Of course, the Whitehead rule does nothing to disturb the basic property rule that a grantor' cannot convey more than the grantor1' actually owns. See, e.g., Chancy v. Chancy Lake Homeowners Ass’n, Inc., 55 So.3d 287, 297 (Ala. Civ. App. 2010)(stating that “[a] landowner cannot convey a greater interest in property than he possesses”). Thus, proof that the grantor of the first-recorded deed did not actually own the property at the time of the purported conveyance will defeat the presumption underpinning the Whitehead rule. O’Rear, however, presents no such proof.
In this case, the only post-fire evidence concerning ownership of the mineral interest before the 1883 deed is an 1871 agreement, recorded in 1879, between one Nancy Landon and one Luiza Taylor (“the 1871 agreement”), and three 1920 affidavits sworn to by. G.W. Kilgore, E.S. Hutto, and W.R. Brown (“the 1920 affidavits”). The 1871 agreement states, in pertinent part:
“Contract made and executed the 28th day of November one thousand eight hundred and seventy one by and between Nancy Landon of the first part and Luiza Taylor of the second part both of the County of Walker and the State of Alabama[.] [T]he said Nancy Landon agrees to give to her daughter Luiza Taylor her property to take’care of her her life time and the said Luiza Taylor agrees to take care of her mother Nancy Landon her life time for the property of her mother all the following described Land ... [describing the Landon parcel] .... and if either of the above named parties fails to comply with the above named duty this obligation is void and set aside.” •
O’Rear argues that this agreement shows that the mineral interest had not been severed .from the surface éstate of the Landon parcel and that, therefore, Elizer Taylor did not own the mineral interest when she purported to convey it to Mus-grove Bros, in 1883. This argument is unpersuasive. At-most, the 1871 agreement is evidence that someone besides Elizer Taylor owned the mineral interest in 1871. Evidence that Elizer Taylor did not own the mineral interest in 1871 is not inconsistent with her ownership of the. interest 12 years later in 1883. Thus, the 1871 agrees ment cannot defeat the presumption that the 1883 deed is the beginning point of the chain of title.[6]
The 1920 affidavits, which are each identical in substance, allege that, when the 1883 deed was executed, Elizer Taylor had been in adverse possession of both the mineral interest and surface of the Landon parcel for “more than one year.” O’Rear argues that, because those-affidavits establish that Taylor had been in adverse possession of the as-yet-unsevered mineral interest for less than the prescriptive period when she executed the 1883 deed, that deed could not convey title. This argument is also unpersuasive. The assertion in the 1920 affidavits that Taylor was in adverse possession of the mineral interest is a legal *340 conclusion, not a factual allegation.[7] Furthermore, the nonspecific assertion that Taylor had been in adverse possession for longer than a year does not support O’Rear’s argument that Taylor had been in adverse possession for less than the prescriptive period. That assertion is, in fact, fully consistent with Taylor’s possession for the prescriptive period. The 1920 affidavits contain no factual allegations inconsistent with Taylor’s actual ownership of the mineral interest and therefore cannot defeat the presumption that the 1883 deed is the beginning point of the chain of title to the mineral interest.
Conclusion
In this case, the first conveyance of the mineral interest recorded after the total destruction of the Walker County land records is the 1883 deed. As such, the 1883 deed is the presumed beginning point of the chain of title under the Whitehead rule. O’Rear has offered no evidence sufficient to rebut this presumption. Therefore, we hold that title to the mineral interest in the Landon parcel vests in Simmons Group. Accordingly, we reverse the circuit court’s judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Bolin, Main, Wise, and Bryan, JJ., concur.
Shaw, J., concurs specially.
Murdock, J., concurs in the result.
Stuart and Parker, JJ., concur in the result in part and dissent in part.

. The original owner of the disputed interest was John W. Landon, who acquired the property by patent from the United States government in 1858.

. When the mineral interest in a property is severed from the surface estate, adverse possession of the surface does not constitute adverse possession of the mineral interest. Sanford v. Alabama Power Co., 256 Ala. 280, 288, 54 So.2d 562, 569 (1951) ("To acquire by adverse possession the title to the mineral interests so severed, there must be an actual taking or use under claim of right of the minerals from the land for the period necessary to affect the bar.”).

. When the mineral interest has not been severed from the surface estate, adverse possession of the surface is sufficient for adverse possession of the mineral interest. Black Warrior Coal Co. v. West, 170 Ala. 346, 351, 54 So. 200, 201 (1910) ("Had [the adverse possessor not attempted to sever] the coal and mineral interest in said lands ... there could be no question but that his adverse possession would have ripened into a perfect title to the entire interest in the land several years before his death.” (emphasis added)).

. We say "purports to convey” because in lost-chain-of-title cases it is not possible to unequivocally determine the true owner of the disputed property at the time of the first-recorded conveyance. Indeed, this is' the problem the Whitehead rule is intended to remedy.

. "While the legal title to real property can be shown by a valid deed, the record title is the highest evidence of ownership of real property and is not easily defeated.” 63C Am. Jur. 2d Property § 39 (2009) (emphasis added).

. Furthermore, the 1871 agreement cannot itself serve as the presumed beginning point of the chain of title under Whitehead. The agreement is executory in nature and does not purport to convey an interest in the Landon parcel.

. Section 35-4-70, Ala. Code 1975, governs the admissibility of affidavits as evidence in litigation over title to land and states that affidavits "shall be admissible as evidence of the facts therein recited and shall be sufficient to prima facie establish such facts.” (Emphasis added.)