PARKER, Justice
(concurring in the result in part and dissenting in part).
' I concur in the result insofar as the majority reverses the circuit court’s judgment in favor of the O’Rear defendants.
I dissent in part because I believe that the main opinion unnecessarily limits a trial court’s discretion in considering relevant evidence in a property dispute when it is presented with the situation, as in this case, where competing chains of title cannot be traced to a common grantor or to a patent deed from the United States as a result of the destruction of the relevant land records. I agree that the rule from Whitehead v. Hester, 512 So.2d 1297 (Ala. 1987), applies in this case; I disagree, however, with the majority’s interpretation and application of this rule.
Initially, I note that the Whitehead rule was created by this Court in 1987 to resolve a very specific factual situation before it and that it has not been applied since.[8] The Whitehead Court made very clear that its decision announcing this novel, judicially created rule was to be limited to the facts before it. See Whitehead, 512 So.2d at 1301-02 (using language like “under the facts of this case” and “[i]n such circumstances”). The Whitehead Court did not have before it any evidence of recorded instruments other than deeds. The question now before this Court was not decided by the Whitehead Court. I do not think it would be wise to try to make the rule created by the Whitehead Court—intended to resolve a specific factual situation before it—into a “one-size-fits-all” rule with rigid application. With this in mind, I turn to a discussion of Whitehead.
In Whitehead, the parties disputed the ownership 1 of a mineral interest. This Court stated that “[t]he parties derive their respective claims of title to the minerals under two separate chains of title which do not emanate from a common grantor and which are not traced back to a patent from the United States.” 512 So.2d at 1298. This Court noted that the parties were unable to trace their claims of title back to the patent title from the United States “because in 1890, a fire destroyed the courthouse in which land records were maintained.” Id. Accordingly) there was a “break in each party’s chain of title.” Id.
The appellees in Whitehead claimed ownership of the mineral interest “by virtue of a direct and unbroken chain of conveyances commencing in 1892.” 512 So.2d at 1298. The original conveyance in thé appellees’ chain of title was a quitclaim deed dated October 7, 1892. It was undisputed that the October 7, 1892, deed was “the first documentary evidence,”' 512 So.2d at 1298-99, concerning the ownership of the at-issue mineral interest following the 1890 fire that had destroyed the relevant land records. The appellants in Whitehead “trace[d] their surface owner *342 ship through a chain of conveyances commencing with a warranty deed ... dated October 27, 1906, which was 14 years after the initial quitclaim deed conveying the mineral interest to [the appellees’] predecessor.” 512 So.2d at 1299.
The trial court in Whitehead had held that the quitclaim deed dated October 7, 1892, severed the mineral interest from the surface estate of the at-issue property. The appellants argued that the October 7, 1892, deed was “ineffective to transfer title, because there [was] no evidence which tracefd] title back to the United States or to a common.grantor.” 512 So.2d at 1301. This Court noted .that, “[o]f course, neither side.in this case can trace its title back to the sovereign or to a common grantor because of the total destruction of all the land records by the 1890 fire.” Id. This Court then stated:
“We cannot accept the assertion that [the grantor of the October 7, 1892, deed] was not the holder of legal title to the land and was not legally empowered to sever the- mineral interest, under the facts of this, case. The first conveyance covering the disputed mineral interest which was filed for record after the destruction of county records by fire was the conveyance in 1892 from [the grant- or of'the October 7, 1892, deed] to [the grantee]. This conveyance was competent and relevant evidence of a separate mineral estate, in which [the grantor of the October 7, 1892, deed] claimed an interest. Since the conveyance from [the grantor of the October 7, 1892, deed] to [the grantee] in 1892, the mineral interest has passed through a clear and unbroken chain of title directly to [the appellees]. If the argument of the [appellants] were sustained, then one who acquired a mineral interest created in Franklin County prior to 1890 might have difficulty in establishing the validity of his title. To require [the appellees] to somehow locate the originals of the instruments that were destroyed in- the fire and, thus, establish their chain of title from the present date completely back to a government patent or to a common grantor, would place an unreasonable burden on them, or on others similarly situated.
“The initial conveyance in the [appellants’] chain of title was from W.H. Tipton to J.A. Thorn in 1906, Again, because of the destruction of thé courthouse records by fire, there is nothing in the records to indicate that W.H. Tipton had any title whatsoever to convey in 1906. After the patent in 1844, the next .conveyance concerning the subject property filed for record—so far as the present records indicate— was the 1892 quitclaim deed from [the grantor of the October 7, 1892, deed] to [the grantee]. Some 14 years later, the [appellants’] chain of title begins with a deed from one W.H, Tipton to J.A. Thorn. In such circumstances, when dealing with two separate and distinct titles to the same property, as here, the Court should acknowledge the superiority of the title of those obtaining interests by the earliest recorded instruments. Pollard v. Simpson, 240 Ala. 401, 199 So. 560 (1941).”
512 So,2d at 1301-02. Thus, this. Court concluded that the appellees had established “paramount legal title” to the mineral interest. 512 So.2d at 1304.
In summary, this Court determined in Whitehead that, in that it was impossible for the claimants of the property to trace their chains of title to the original grantor because the land records needed to do so had been destroyed by fire, the Court presumed that the grantor of - the earliest recorded instrument subsequent to the destruction of the land records owned a fee- *343 simple interest in the land the grantor was conveying. Accordingly, this Court determined that the party able to trace his chain of title to the earliest recorded instrument indicating ownership of the land had paramount legal title.
The Whitehead rule is one of practicality; it operates to establish a new starting point when there is a break in the chain of ownership concerning a disputed property as the result of the destruction of the relevant land records. The purpose of the Whitehead rule is to establish this new starting point as close in time as possible to the destruction of the relevant land records. Unlike the majority, I believe that the trial court should be permitted to consider any admissible evidence in applying the Whitehead rule in order to be as certain as possible that the new starting point begins with the actual owner of the property.
. The majority decision, however,- interprets Whitehead to hold that the earliest recorded instrument purporting to convey title is the only evidence that can establish a new starting point under the Whitehead rule. I disagree with this interpretation of the Whitehead rulé because it deprives the trial court of the discretion to consider admissible evidence, other than a recorded deed, for purposes of establishing a new starting point.[9] Whitehead did not establish such a rigid precedent, and I see no reason to make the judicially created, fact-specific "Whitehead rule rigid at this time.
In Whitehead, this Court noted that the first recorded documentary evidence concerning ownership of the at-issue property following the destruction of- the land records was the October 7, 1892, deed. However, nothing in Whitehead indicates that the first documentary evidence must be a deed. It just so happened that in Wfiiite-head a recorded deed was the first documentary evidence; deeds were the only evidence presented concerning ownership of the property in Whitehead. It is within this context that' the Whitehead Court stated: “In such circumstances, when dealing with two separate and distinct titles to the same property, as here, the Court should acknowledge the superiority of the title of those obtaining interests by the earliest recorded instruments.” 512 So.2d at 1802 (emphasis added). Black’s Law Dictionary defines “instrument” as “[a] written document; a formal or legal document in writing, such as a contract, deed, will, bond, or lease.” Black’s Law Dictionary 719 (5th ed. 1979).
In the present case, the earliest recorded instrument concerning ownership of the property following the alleged destruction of all the land records is the November 28, 1871, agreement between Nancy Landon and Luiza Taylor, a legal instrument recorded in the Walker County Probate Court on March 21, 1879: The agreement does not convey an interest in the property; however, I do not find this fact to be dispositive. The agreément is reliable evi *344 dence. It even has all the formalities of a deed: It is signed .by both parties, witnessed by two parties, contains a metes- and-bounds description of the property, and is recorded in the deed book of the probate court. Why is this agreement, which clearly identifies the owner of the property as Nancy Landon, any less reliable than a quitclaim deed in determining the actual owner of the property after the destruction of all the relevant land records? [10]
I also present the following hypothetical to demonstrate the danger of adopting the majority’s position of divesting the trial court of discretion to consider admissible evidence for the purpose of establishing a new starting point under the Whitehead rule in cases such as the present one. Suppose in the present case that, instead of the recorded agreement, Nancy Landon had recorded an affidavit concerning the ownership of the property. Assume that Nancy Landon had, at some time before the courthouse was destroyed and with it all of the land records, obtained an easement over her neighbor’s property. Also assume that Nancy Landon recorded the instrument conveying to her the easement before the land records were destroyed. The land records are then destroyed by fire. Suppose that Nancy Landon and the subservient property owner did not have a copy of the instrument conveying to Nancy Landon the easement to re-record. However, after the land records were destroyed, wanting to protect their respective interests, assume that Nancy Landon and the subservient property owner recorded a joint affidavit in the probate court stating that Nancy Landon owned her property and had obtained an easement over the property of the subservient property owner sometime prior to the destruction of the courthouse and the iand records.
Adopting the majority’s strict application of the Whitehead rule, the trial court would not be allowed to consider 'this admissible evidence concerning the actual ownership of the property for purposes of establishing a new starting point. I do not see the wisdom- in adopting such a strict application of the Whitehead rule. I suggest that allowing courts to consider evidence beyond recorded deeds in order to determine the owner of the property following the destruction of all records is consistent with the spirit of the Whitehead rule.
Under the actual facts of the present case, the November 28, 1871, agreement precedes the May 14, 1883, deed, which was not recorded until March 8,1884; it is the first documentary evidence concerning the ownership of the property following the alleged destruction of all the records concerning the conveyances of property in Walker County.[11] Accordingly, as did the *345 circuit court, I would apply the Whitehead rule in the present case to presume that Nancy Landon, not Elizer Taylor, owned a fee-simple interest in the property.
The practical result of my approach would be that Elizer Taylor’s deed to Mus-grove Bros, did not sever the mineral interest from the property because, at that time, Elizer Taylor had no interest in the property to convey. Therefore, I would affirm the circuit court’s judgment against Simmons Group. However, I do not agree with the circuit court’s judgment in favor of the O’Rear defendants because I believe that Simmons Group has demonstrated that the trial court erred in determining that “Chilton was the owner of the property in fee by adverse possession as of 1921.” .The evidence in the record does not support the trial court’s conclusion. Therefore, having concluded that the mineral interest had never been severed from the property, I would send the matter back to the circuit court and allow it to conduct further fact-finding in light of this holding. The property remaining one entire “bundle of sticks,” either party could then establish ownership of the property through the principle of adverse possession of the surface.
Stuart, J., concurs.

. Not surprisingly, given that the Whitehead rule has been applied only once, Jesse Evans’s Alabama Property Rights and Remedies, the preeminent property treatise in the state, does not cite Whitehead or provide any discussion of the Whitehead rule. I have researched cases from other jurisdictions and have not discovered any uniform rule concerning disposition of property given the situation raised in this case; Rather, in such a situation the various states have appeared to develop differing rules based on the specific facts before the respective courts.

. I . note that the majority decision includes the following statement:
"Of course, the Whitehead rule does nothing to disturb the basic property rule that a grantor cannot convey more than the grantor actually owns. See, e.g., Chancy v. Chancy Lake Homeowners Ass'n, Inc., 55 So.3d 287, 297 (Ala. Civ. App. 2010)(stating that ‘[a] landowner cannot convey a greater interest in property than he possesses’). Thus, proof that the grantor of the flrst-recorded deed did not actually own the property at the time of the purported conveyance will defeat the presumption underpinning the Whitehead rule. O’Rear, however, presents no such proof.”
233 So.3d at 339. However, based on its interpretation of the Whitehead rule, the only evidence contemplated by the majority that may be considered by the trial court concerning ownership of. the property is a recorded deed.

. The earliest recorded instrument in Whitehead was a quitclaim deed, which does not always convey an interest in property. Of course, “if a grantor in a quitclaim deed has a good legal title, the quitclaim is as effectual to pass the title as a warranty deed.” Jesse P. Evans III, Alabama Property Rights and Remedies § 4.5 (5th ed. 2012). However, "[a] quitclaim conveys nothing more than the interest owned by the grantor at the time of this execution and no more.” Id. Further,
“[a] quitclaim deed purports to convey only the grantor's present interest in the land, if any, rather than the land itself. Since such a deed purports to convey whatever interest the grantor has at the time, its use excludes any implication that he has good title, or any title at all. Such a deed in no way obligates the grantor, If he has no interest, none will be conveyed.”
Robert Kratovil and Raymond J. Werner, Real Estate Law 60 (8th ed. 1983) (final emphasis added).

. Nancy Landon’s agreement with Luiza Taylor was recorded on March 21, 1879, more than four years before Elizer Taylor executed the May 14, 1883, deed in favor of *345 Musgrove Bros. This Court has stated that "[t]he purpose of recording is to affect purchasers subsequent to the recording ... with notice.” Williams v. White, 165 Ala. 336, 337, 51 So. 559, 559 (1910); see also Jesse P. Evans III, Alabama Property Rights and Remedies § 5.3[a] (5th ed. 2012) ("[T]he recording of an instrument under the recording statutes is conclusive notice to any third person of everything that appears on the face of an instrument so recorded.”(footnote omitted)). As the earliest recorded instrument, the agreement put Elizer Taylor, Musgrove Bros., and all other third parties on notice of the fact that Nancy Landon claimed fee-simple ownership of the property.